251 So.2d 650 (1971)
C. D. WINZER et al., Plaintiffs-Appellants,
v.
Earl LEWIS, Jr., et al., Defendants-Appellants.
No. 11648.
Court of Appeal of Louisiana, Second Circuit.
June 22, 1971.
Rehearing Denied September 8, 1971.
Writ Refused October 28, 1971.
*652 Shaw & Shaw, by W. M. Shaw, Homer, for plaintiffs-appellants.
Johnston, Johnston & Thornton, by James J. Thornton, Jr., for Billy R. Bibby, defendant-appellant.
Joseph R. Bethard, Shreveport, for Earl Lewis, Jr., defendant-appellant.
Before BOLIN, HEARD and HALL, JJ.
BOLIN, Judge.
This suit stems from a head-on collision between a Ford sedan, owned and operated by C. D. Winzer, and a Ford pickup truck, owned by Billy R. Bibby and driven by his employee, Earl Lewis, Jr. Lewis was alone in his truck but Winzer was accompanied by his wife, Helen, and infant daughter, Tammy Denise. Winzer received serious personal injuries and his wife and daughter were killed. Following a lengthy trial Winzer was awarded judgment for substantial amounts against Lewis, Bibby and the latter's insurer, Travelers Indemnity Company. The demands against Stonewall Insurance Company, the alleged insurer of Lewis, were rejected and there has been no appeal from this portion of the judgment. Travelers has paid its policy limits, but Lewis and Bibby have appealed. Winzer has answered their appeal and has also appealed devolutively seeking an increase in the awards.
The accident occurred near Homer, Louisiana, on a 2-lane blacktop highway at approximately 1:15 a. m. on May 5, 1968. The night was dark but the weather was good. Lewis was driving his truck south and Winzer was proceeding in a northerly direction. Just before reaching the point of impact Winzer had driven his car up a rather long, fairly steep hill and had rounded a sharp curve to his right when he suddenly was confronted with the on-coming Lewis vehicle traveling on the wrong side of the road. As soon as the pickup became visible to Winzer, and he realized it was on his side of the highway, he applied his brakes but the vehicles collided head-on. Blood samples were taken from both Winzer *653 and Lewis. An analysis of Lewis' blood sample, performed several hours after the accident by Dr. Willis Butler, reflected a blood-alcohol content of 0.19½%. Dr. Butler, former coroner of Caddo Parish and a well-known expert on alcohol-blood analyses, testified Lewis was intoxicated. The analysis of Winzer's blood showed only a trace of alcohol, which was termed by Dr. Butler as being of no consequence.
The lower court found the accident was caused by the negligence of Lewis in driving on the wrong side of the road while in a drunken condition. It further found Winzer free from contributory negligence. These findings have not been seriously questioned on appeal and we find the record supports such conclusions.
Briefly stated, the issues on appeal are:
1. Whether Bibby is liable in solido with his employee for either of the following reasons:
(a) Lewis was acting within the course and scope of his employment at the time of the accident.
(b) Bibby was at fault in entrusting the pickup truck to his employee, and such fault was a cause of the accident.
2. Are the amounts of the awards adequate?
3. Was the trial court correct in assessing interest at the rate of 5% per annum from judicial demand until August 20, 1970, and 7% thereafter until paid?
In order to put the case in its proper perspective and to facilitate the orderly disposition of the above issues, we shall relate the facts and background as we find them.
Billy R. Bibby, d/b/a Bibby Construction Company, was in the land-clearing and dirt-moving business, necessitating the use of bulldozers. In December, 1967 he employed Lewis primarily as a bulldozer operator and also as a general handyman. When Lewis first began his employment he drove to and from work in a 1953 Chevrolet which he owned. On January 5, 1968 Bibby acquired the 1965 model pickup truck which was involved in the accident made the basis of this suit. During this same month Lewis sold his Chevrolet to C. L. Brazill. The sale of the Chevrolet by Lewis was denied by the latter, but we find it to be a fact.
Soon after Lewis sold his Chevrolet, Bibby began allowing Lewis to use the truck for transportation to and from work. Lewis did not have a Louisiana driver's license, it having been revoked after his conviction for drunken driving. The evidence is conflicting as to whether Bibby was aware of this fact when he first entrusted the pickup truck to Lewis. However, the record convinces us Bibby instructed Lewis, from the time he began using the truck, not to drive it on the main highways but to use the back roads, and not to drive it in to town unless Lewis' daughter was driving.
There is a mass of testimony as to whether Bibby knew of Lewis' past convictions for drunken driving, and also as to when Bibby first learned that Lewis did not have a driver's license. We shall not burden this opinion with a detailed analysis of this testimony, but we find the evidence preponderates to the effect that Bibby became aware, in the early part of April, 1968, that Lewis' driver's license had been revoked as a result of his conviction on a drunk-driving charge. In fact, this was admitted by Bibby in a discovery deposition and was not seriously contested in his brief before this court. Charles Kendrick, of Homer, who was Bibby's insurance agent, testified he told Bibby that Lewis was unable to purchase liability insurance because of his driving record, and that Bibby assured Kendrick he need not be concerned because Bibby intended to terminate Lewis' employment soon thereafter.
After having been refused insurance by Kendrick's agency, Lewis applied to Smith's *654 agency at Grambling, Louisiana. Smith testified he took Lewis' application and forwarded it to the general agency in Bossier City, where a policy was later issued to Lewis by the Stonewall Insurance Company. According to Smith, Lewis falsified his application by stating he had only been convicted twice for drunken driving.
An application was sent to the Financial Responsibility Section of the Department of Public Safety of Louisiana in order to initiate the return of Lewis' driver's license, but at the time of the accident it had not been received. Bibby was aware of this application. Therefore, in summary, we find that at the time of the accident Lewis did not have a valid driver's license because it had been revoked for drunken driving, and that Bibby was aware of the fact Lewis did not have a license and of the reason for its revocation.
The extent to which Bibby had entrusted the use of the truck to Lewis is crucial to the question of Bibby's liability. Despite Bibby's denial, the testimony is overwhelmingly convincing that from the early part of April until the accident Lewis had practically the unlimited use of the truck. He was allowed to drive it to and from work and to keep it at his home while he was not working. It is true Bibby instructed him not to get on the main roads with the truck unless his daughter was driving. On this point, the record reflects Bibby did not know Lewis' daughter, but he gave the explanation that he thought, of the two, she was the better driver. This can lead only to the conclusion that Bibby was skeptical of Lewis' legal right and ability to drive the truck.
The lower court found Lewis was acting within the course and scope of his employment at the time of the accident and, therefore, Bibby was responsible for Lewis' torts. It also found Bibby was negligent in permitting Lewis to drive his truck on the night of the accident, and that such negligence was a cause of the accident.
Subsequent to the signing of the formal judgment in the lower court Travelers executed an agreement with all necessary parties in which Travelers acquiesced in the judgment rendered by the district court as it related to Travelers. Travelers paid its policy limits, which included the sum of $4,292.47 claimed by Confederate Memorial Medical Center for medical expenses incurred by Winzer. Therefore, Travelers is not a party to this appeal but its counsel appears representing Bibby and Lewis pursuant to the duty of the insurer to represent the insured. Confederate Memorial, which had intervened in the lower court, is not a party to this appeal. This leaves only the plaintiff, Winzer, and the defendants, Lewis and Bibby, as active parties in this appeal.
We shall direct our attention first to the question of Bibby's responsibility flowing from his allowing Lewis the indiscriminate use of his truck when he knew of the conditions heretofore set forth. Pertinent to Bibby's liability are the following provisions of the Highway Regulatory Act:
La.R.S. 32:52
"No person shall drive or operate any vehicle upon any highway within this state unless and until he has been issued a license to so do as required by the laws of this state nor shall any person permit or allow any other person to drive or operate any vehicle owned or controlled by him upon highways of this state unless and until such other person has been issued a license to so do as required by the laws of this state."
La.R.S. 32:417
* * * * * *
"C. It shall be unlawful for any person or entity to employ any person as a driver of a motor vehicle if said person being employed does not have a current, valid license issued by the department in accordance with the provisions of this Chapter."
*655 Unquestionably, at the time of the accident Lewis was in violation of La.R.S. 32:52 in that he was operating the truck without a driver's license. From the facts as previously found by us, narrated above, we conclude Bibby was in violation of both R.S. 32:52 and 32:417 at the time of the accident. It is undisputed Lewis did not have a driver's license when he was employed by Bibby, but Bibby contends he thought Lewis would soon have his license reinstated because he had forwarded the necessary document to the Financial Responsibility Section of the Louisiana Department of Public Safety. The cited statutes being regulatory and criminal in nature, the crucial question is whether the violation of the statute by Bibby had a causal connection with the automobile accident on the morning of May 5, 1968.
Before embarking upon a search for an answer to the perplexing question posed above, we deem it appropriate to point out that the basic and fundamental tort law of Louisiana is contained in Louisiana Civil Code Article 2315, which provides in part as follows:
"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
(Emphasis added.)
It would seem that the above law is so simply stated that little opportunity is left for any misunderstanding as to its meaning. Indeed, it has stood the test of time and scrutiny of the courts throughout the jurisprudence of Louisiana. We think it fair to say that in most instances, when its meaning has become obscure or complicated, it was because our courts have resorted to highly theoretical doctrines foreign to our civil law system. The word "causes" has come in for its share of interpretations. In searching the jurisprudence we find such classifications as "proximate cause", "intervening cause", "cause-in-fact" and other terms too numerous to mention. The same might be said of the word "fault". Perhaps the most noted recent case involving the question of "cause" is Dixie Drive It Yourself System New Orleans Company, Inc. v. American Beverage Company, et al., 242 La. 471, 137 So.2d 298 (1962), in which the Louisiana Supreme Court held the violation of a highway safety statute was negligence per se and a cause-in-fact of a vehicular collision and resulting injuries. For an interesting and well-documented article on this case see Ruminations on Dixie Drive It Yourself by W. S. Malone, 30 La.Law Review 363 (1970).
It was held, in Attaway v. Schluntz (La. App. 1 Cir. 1968), 208 So.2d 332, that a failure to observe a provision of the Highway Regulatory Act constituted negligence per se and, under the facts of that case, was a proximate cause of the accident. Therefore, we might be tempted to cite the Dixie Drive It Yourself and the Attaway cases and hold Bibby guilty of negligence per se in violating the provision of the Driver's License Law, cited supra, and that such negligence was a cause-in-fact of the ensuing truck-car collision which rendered him responsible for damages. Without any criticism of this approach, we do not choose to rest this decision solely on the basis outlined above.
We find Bibby responsible in tort in this case under the plain and simple language of Article 2315 of the Louisiana Civil Code. Bibby violated the law by allowing Lewis to drive his truck freely, knowing Lewis did not have a driver's license, and knowing Lewis' license had been suspended or revoked because he had been convicted of drunken driving. The violation of this statute by Bibby was a "cause" of the accident, by whatever legal terminology we might employ. The accident would not have happened if Lewis had not been driving. The evidence also convinces us the accident would not have happened had Lewis not been driving while intoxicated. Bibby knew Lewis had lost his driver's license because of having been convicted of driving while intoxicated. If Lewis had not been drinking there might *656 be some room for argument that the violation of the statute by Bibby had no causal connection with the accident. However, here, the accident was caused primarily for the same reason that caused Lewis to have his license revoked.
Present counsel for Bibby, who became associated with this case after trial in the lower court, has ably represented his client before this court both in brief and oral argument. It is strenuously urged the purpose of the statutes cited supra is penal in nature in order to prohibit unlicensed driving and the employment of an unlicensed person as a driving employee. Following this line of argument, it is contended that for this court to hold the violation of the statute was a cause of the accident would be giving an effect to the statute which was never intended by the legislature. We are fully mindful of the difficulty of determining legislative intent, and we think a court that attempts this task is confronted with many problems. However, it is the duty of a court to interpret any law according to its plain and unambiguous terms. Louisiana R.S. 32:417 is subject to only one interpretation; that is, to make it a violation of law for any person to employ a driver of a motor vehicle if such driver does not have a driver's license.
Although the statute may be penal in nature, we think it was obviously intended to protect the users of Louisiana roads and highways from exposure to the hazards reasonably to be expected from those drivers who, either by reason of youth, infirmity, drunkeness or other disability, are unlicensed. Although the court, in Elmendorf v. Clark, 143 La. 971, 79 So. 557 (1918), was dealing with an ordinance prohibiting youths under 18 from driving in the City of Monroe, we think the rationale there expressed applies equally to the instant case and supports our position. The court there said:
"The ordinance prohibiting the operation of cars by persons under 18 years of age is predicated upon the theory that caution and experience are the characteristics of age rather than of youth, and upon the well-founded belief that there are few occupations in which these characteristics are so essential to the public safety as the driving of motor cars through the streets of cities and towns. * * * and it is the duty of the courts to make it plain that, in the hands of incautious and inexperienced chauffeurs, they are a constant menace to human life * * *"
(Emphasis added.)
Having found Bibby was at fault in entrusting his vehicle to Lewis under Louisiana Civil Code Article 2315, we pretermit a determination of whether the lower court was correct in finding Lewis was acting within the course and scope of his employment at the time of the accident.
In the lower court judgment was rendered in favor of C. D. Winzer, individually as follows:

A. For personal injuries
 1. For bodily injuries,
 disability, pain and suffering $20,000.00
 2. For loss of past and
 future wages 20,000.00
B. Damages for death of
wife 20,000.00
C. Damages for death of
Tammy Denise Winzer 5,000.00
D. Special damages for
medical expenses, including
Confederate Memorial Medical
Center, funeral expenses
for wife and daughter, and
damage to automobile 5,698.00
E. To C. D. Winzer, natural
tutor of the minors, Jessie
Lee Winzer, Bessie Mae Winzer
and Carolyn Renee Winzer,

*657
and for their use and
benefit, as follows:
Jessie Lee Winzer 5,000.00
Bessie May Winzer 5,000.00
Carolyn Renee Winzer 5,000.00

In his written reasons for judgment, the trial judge stated:
"In attempting to make an award for personal injuries and for pain and suffering, we note that there are no set rules for our guides. Each case must stand on its own particular facts, the injuries received and its consequences, and the ability of the party cast to respond in damages."

(Emphasis added by this court)
Further, in his opinion, after reviewing numerous cases cited by counsel for Winzer, we find:
"However, an examination of those cases shows that in each of them the party cast was a corporate defendant well able to respond in damages in considerable amounts."

(Emphasis added by this court).
In arriving at a proper award in a tort case we are aware of the provision in Louisiana Civil Code Article 1934(3) that much discretion must be left to the trial judge. Cases interpreting this provision have held the trial court awards should not be altered on appeal unless there is a finding of an abuse of this "much discretion". Gaspard v. LeMaire (1963), 245 La. 239, 158 So.2d 149; Ballard v. National Indemnity Co. of Omaha, Nebraska (1964), 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler (1967), 250 La. 959, 200 So.2d 127. The trial judge was in error in his findings relative to quantum as evidenced by the emphasized portion of his opinion, quoted supra. It was correctly stated that the ability of the party cast to pay may be taken into consideration, but the inference that a larger award would be made if the party cast had been a corporation is erroneous. The burden of establishing the lack of ability to pay is on the party cast. There is no evidence in this record that Bibby is unable to respond to any judgment that might be rendered against him. For this reason we are not attaching the customary weight to the findings of the trial judge as to quantum.
We shall first pass on the award to Winzer individually. On the date of the accident he was 33 years of age and employed by the Louisiana State University at its North Louisiana Hill Farm Experiment Station at an annual salary of $4,491.76. In connection with his employment he was furnished a rent-free house valued at from $8,000 to $10,000.
The impact of the wreck was so severe it knocked Winzer unconscious and killed his wife and infant daughter almost instantly. Winzer was immediately taken by ambulance to a hospital at Homer. He remained at the Homer hospital for a few days and was removed to the Confederate Memorial Medical Center at Shreveport. His injuries caused him severe pain and were so extensive as almost to defy description. Prior to trial he had spent almost seven months in the two named hospitals. During the first two months of his hospital confinement he was in critical condition and required constant nursing care. He suffered a severe head injury, which caused him to be disoriented. His right arm was almost severed. He had internal injuries consisting of collapse of his right lung and bruising of both kidneys necessitating surgical removal of his right kidney. In addition to the surgery to his right arm and the removal of his right kidney, Winzer had other operations consisting of an open reduction of a fracture of the right femur and the insertion of a Hansen nail to the medullary canal; and a tendon transfer on his right forearm. As a direct result of his injuries Winzer was diagnosed as having chronic osteomyelitis of the femur of his right leg.
The consensus of the medical testimony is that Winzer is totally and permanently disabled *658 to do any type of work requiring physical exertion. He was required to use two crutches for an extended period of time and then one crutch. At the time of trial he was able only to hobble without a crutch.
For Winzer's personal injuries, consisting of pain and suffering and disability both past, present and future, we find an award of $20,000 is grossly inadequate. Because of the seriousness of his injuries Winzer can never be made whole by the mere payment of money by the tort-feasor, but it is the duty and the responsibility of the court to make a just and reasonable award. We conclude an award of $50,000 to Winzer for his personal injuries is justified and most conservative under the circumstances.
The lower court awarded Winzer only $20,000 for the loss of wages, and we find this portion of the judgment to be grossly inadequate. According to any life-expectancy formula, it can safely be said Winzer had a life work-expectancy of at least thirty years. Taking into consideration that it is possible that he might be physically able to do some light work within his lifetime, we have concluded an award of $45,000 for loss of wages would be just and reasonable.
At the time of her death Helen Winzer was 32 years of age. A husband is entitled to recover damages for the death of his wife caused by the negligence of another. The amount must be determined according to the facts and circumstances of each case. From our consideration of all of the evidence, we find no error in the award of $20,000 to Winzer for the death of his wife.
Without detailing the evidence, we find the award made by the lower court for special damages is correct and should not be disturbed on appeal.
Winzer was awarded $5,000 for the death of his 18-month-old daughter, Tammy Denise. The law of Louisiana permits a parent to recover damages for the loss of a child through the negligence of another. This recovery is based in part upon the suffering and deprivation caused to the parent by the loss of a loved one. The courts, in fixing an award, must recognize that the damages are not susceptible of exact measurement, but some attempt must be made to right a terrible wrong inflicted upon a parent by the loss of his child. In arriving at a proper award the court must take into consideration all of the evidence. We conclude the sum of $5,000 is insufficient, and consider an award of $10,000 to be more equitable and in line with the jurisprudence of this state.
Jessie Lee Winzer, Bessie Mae Winzer and Carolyn Renee Winzer were each awarded the sum of $5,000 for the loss of their mother. Their father, acting on their behalf, has asked this court to increase these awards. The loss of a mother to a child of tender years is an irreparable injury for which the law can only attempt to compensate in some measure by a monetary award. The ages of the children were 9, 8 and 5 years. Our courts have made larger awards to major children for the loss of their mother and certainly each of these children is entitled to a greater amount than a grown person. We conclude these children should be awarded the sum of $10,000 each for the loss of their mother.
The judgment of the lower court provides for legal interest at the rate of 5% per annum from March 31, 1969 until August 20, 1970, and 7% per annum from August 20, 1970 until paid. The provision for the change in the rate of interest was obviously inserted in order to give effect to Act 315 of the Louisiana Regular Session of 1970, which changed the rate of legal interest from 5% to 7%.
Prior to the enactment of the 1970 act, the applicable law was:
Louisiana Civil Code Article 1938:
"All debts shall bear interest at the rate of five per centum per annum from the *659 time they become due, unless otherwise stipulated."
Louisiana Civil Code Article 2924:
"Interest is either legal or conventional. Legal interest is fixed at the following rates, to wit: At five per cent on all sums which are the object of a judicial demand. Whence this is called judicial interest;"
The question of whether such a change in interest rate should be given retrospective or prospective effect appears to have never been decided by the Supreme Court of Louisiana. However, there have been two recent court of appeal cases squarely deciding the question contrary to the decision of the district court. Ducote v. Life Insurance Company of Louisiana (La.App. 3 Cir. 1971), 245 So.2d 531; and Hebert v. Travelers Insurance Company (La.App. 3 Cir. 1971), 245 So.2d 563.
We find the lower court erred in awarding 7% interest from the effective date of the 1970 act. In ex delicto cases legal interest attaches from the date of judicial demand and not from the date of judgment. (La.R.S. 13:4203). On the date of judicial demand in this case the rate of legal or judicial interest was fixed at 5%. The 1970 act contained no language which could be interpreted as making its provisions retroactive and, therefore, the act did not affect the rate of interest herein.
For the reasons assigned the judgment awarding plaintiff the sum of $85,698 is amended so as to increase the judgment in favor of C. D. Winzer, individually, to the sum of $130,698, and as natural tutor of the minors named in the judgment from the sum of $15,000 to $30,000.
It is further ordered the judgment be amended to fix the rate of interest at 5% per annum from April 8, 1969, until paid.
As thus amended, the judgment is affirmed. The costs of this appeal are assessed against Earl Lewis, Jr. and Billy R. Bibby, in solido.