501 So.2d 291 (1986)
Cheryl Price SNYDER
v.
Tommy R. BERGERON, Sr. et al.
No. 85 CA 1433.
Court of Appeal of Louisiana, First Circuit.
December 23, 1986.
Rehearing Denied January 30, 1987.
Writ Denied March 20, 1987.
*293 Walton Barnes, II, Zachary, for plaintiff-appellant Cheryl Price Snyder.
Horace Lane, Baton Rouge, for defendants-appellees Tommy R. Bergerson, Sr. and State Farm Mut. Auto. Ins. Co.
Before SAVOIE, CRAIN and JOHN S. COVINGTON, JJ.
CRAIN, Judge.
This case presents the question whether a licensed driver who allowed an unlicensed 14 year old to drive, should be liable for the death of the 14 year old killed due to his own negligence. The licensed driver was 15 years old when he turned his van over to his 14 year old friend to drive. The 14 year old lost control of the van in a one car accident, and was fatally injured. The lower court rejected the wrongful death claim of Cheryl Snyder, the mother of the deceased.

FACTS
On January 21, 1983, Jimmy Price and his friend, Tommy Bergeron Jr. drove to a party in Bergeron's father's van. The van was driven by Bergeron, a 15 year old licensed driver. At about eleven-thirty that evening the two left the party with a friend, Darren LeBlanc. Although Bergeron knew Price was only 14 years old and unlicensed, he allowed Price to drive. After taking LeBlanc home, Bergeron and Price were travelling on La. 409, a two lane, black top highway, towards Denham Springs. Along the way, Price lost control of the van and ran off the road. The van travelled several hundred feet, struck a tree, and turned over on its side. Price was killed instantly. Bergeron suffered minor injuries.
The State Police testified that the accident was caused by Price's inexperience and his failure to maintain control of the vehicle. LeBlanc and Bergeron testified that Price had been speeding earlier, but slowed down after they asked him to. Bergeron testified he fell asleep after they dropped LeBlanc off and that he could not remember anything about the accident.
At trial, plaintiff alleged that Bergeron was negligent in allowing an unlicensed minor to drive and that the Bergeron Sr. was negligent in failing to properly supervise the actions of Tommy, Jr. The trial court found that Tommy's actions were reasonable in allowing Price to drive and that the sole cause of the accident was Price's failure to maintain control of the van. From that ruling plaintiff appeals.

VIOLATION OF A SAFETY STATUTE
Plaintiff claims the trial court erred in not finding that the violation of La.R.S. 32:52 amounted to actionable negligence on the defendants' part. That statute prohibits an unlicensed person from operating a motor vehicle and it further prohibits a licensed driver from allowing an unlicensed person to drive.
In order for the violation of a safety statute to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause in fact of the accident. Boyer v. Johnson, 360 So.2d 1164 (La. 1978); Dixie Drive it Yourself System New Orleans, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). Despite the violation of La.R.S. 32:52, the trial court found that Bergeron's actions were reasonable in allowing Price to drive. The court made these conclusions after finding that Price was not suffering from any incapacity (such as drinking) and had previously demonstrated his ability to drive. We believe the trial court erred in this holding.

a) DUTYSCOPE OF RISKS ENCOMPASSED BY LA.R.S. 32:52
Initially, we conclude that the risk and harm that plaintiff encountered fell within *294 the scope of protection of the statute. Dixie Drive it Yourself, 137 So.2d at 304. Clearly, La.R.S. 32:52 was enacted at least in part, to protect the motoring public by preventing inexperienced and incapable persons from operating motor vehicles on state highways. Winzer v. Lewis, 251 So.2d 650 (La.App. 2nd Cir.1971). La.R.S. 32:52, in conjunction with La.R.S. 32:401 et seq., attempts to accomplish this goal, through training, testing and education. Drivers must acquire and demonstrate at least a minimal degree of driving competency before they can be licensed. A driver lacking these qualifications is a hazard to himself and others.
We find in this particular case that the scope of the protection of R.S. 32:52 and 32:401 et seq. extends to include and thereby protect the minor driver from his own incompetency. In order to determine the scope of the duty at issue, among the policy considerations a court should consider are the severity of the harm, the likelihood of the harm, the foreseeability of risk and the ease of association involved. See PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984); Hill v. Lundin and Assoc. Inc., 206 La. 542, 256 So.2d 620, 622 (1972); Frain as Tutrix of Beason v. State Farm Insurance Co., 421 So.2d 1169 (La.App. 2nd Cir.1982).
In this case, the severity and the foreseeability of the harm are obvious. If an accident occurs, the offending driver is as likely to suffer injuries as any other person involved in the collision. There was a significant likelihood of harm occurring. Price was driving late at night, at high speeds, along a twisting and narrow two lane highway, a task that is a challenge for any driverlet alone an inexperienced youth lacking training and experience to help him handle the risks.
We are further bolstered in our conclusion after considering defendant's conduct in the light of other relevant policy considerations; specifically, the burden of prevention and the social utility of defendant's conduct. Any burden imposed by prohibiting unlicensed drivers from driving is both minimal and insignificant when compared to the risks involved. Similarly, there was little social utility to be gained from Bergeron's allowing Price to drive. Moreover, we find an ease of association between a rule of law which imposes a duty on a licensed driver not to entrust an inexperienced minor with an instrumentality as potentially dangerous as an automobile, and the subsequent violation of that rule resulting in the driver's injury.
Relying on a statement in the case of Stephens v. State Through the Department of Transportation and Development, 440 So.2d 920 (La.App. 2d Cir.1983), writ denied 443 So.2d 1119 (La.1984), the trial court found that plaintiff had to show that the violation of the statute was unreasonable under the circumstances. Stephens also stated that "the violation of a safety statute creates a rebuttable presumption of negligence."[1] These statements raise the issue of which party has the burden of proof in a statutory violation case, and whether the plaintiff must show that the defendant acted unreasonably under the circumstances.
Both the doctrine and the terminology of negligence per se have been repudiated in this state. Weber v. Phoenix Assurance Company of New York, 273 So.2d 30 (La.1973); See Ketcher v. Illinois Central Gulf Railroad Co., 440 So.2d 805 (La.App. 1st Cir.1983), writs denied, 444 So.2d 1220, 1222 (La.1984). Criminal statutes do not set civil liability, rather, they serve as guidelines for the courts to use in determining civil liability. Laird v. Travelers *295 Insurance Co., 263 La. 199, 267 So.2d 2d 714 (1972); Lavergne v. Thomas, 491 So.2d 687 (La.App. 1st Cir.1986).
The trial court found that defendant acted reasonably under the circumstances. We believe that to properly determine the breach question, the issue is more properly framed as follows: Did the defendant's conduct, under the particular facts and circumstances, contravene the policy behind the imposition of the duty? See Boyer, 360 So.2d 1164 at 1167, 1168. Or, is this particular risk within the scope of the risks that led to the imposition of the duty in the first place? Thus framed, the focus is shifted from reasonableness of the defendant's conduct despite the violation, to whether the defendant's conduct or actions constituted a risk "within the ambit of defendant's duty". Boyer at 1167.
What risks did the legislature attempt to prohibit in enacting La.R.S. 32:52 & 32:401 et seq.? In order to make this determination we construe these statutes in pari materia. La.C.C. art. 17. R.S. 32:52 prohibits unlicensed persons from driving, or a licensed driver allowing an unlicensed driver to drive. R.S. 32:401 et seq. govern the regulation and granting of driver's licenses. R.S. 32:402.1 expresses a legislative desire to require every new applicant for a driver's license to have satisfactorily completed a driver education course; a minor must be at least 15 years old to apply for a license; parental permission is required and the license is probationary. R.S. 32:407.
The scheme encourages 14 and 15 year olds to learn to drive under proper supervision after acquiring a learners permit. R.S. 32:422. It is unlawful for a parent to allow his child to operate a motor vehicle even if the child is 15 or older, if the child is unlicensed. R.S. 32:417. It is implicit in this scheme that the legislature considers minors under the age of 15 too young, inexperienced and immature to drive. If the minor is 14 years old, he should learn how to drive with close, trained, supervision. R.S. 32:422.
Nevertheless, if (as defendants maintain) Price, despite his age, was a competent and experienced driver, then we believe that this particular risk was outside the scope of the risks in question. There would be no breach because the scope of the duty to keep inexperienced minors from driving necessarily does not include the risks associated with letting an experienced minor drive. Experienced drivers manage to engage themselves in auto accidents all the time.
Accordingly, we must examine the record to determine what findings are established regarding Price's driving skills. The plaintiff introduced evidence that defendant knew Price was 14 years old and unlicensed. Plaintiff showed that defendant allowed Price to drive the van. Plaintiff introduced evidence, through State Police testimony, that Price was inexperienced and incompetent. Damages resulted. Thus, plaintiff made out a prima facie case in that he showed a duty, a breach, causation and damages. To rebut this evidence, the defendants put on evidence that Price had driven on previous occasions.
The trial court relied on this evidence in determining that defendant's actions were "reasonable". The trial court reviewed the evidence and made its findings of fact. We now review these findings to determine whether they were in error.
We have carefully reviewed the record, and hold that the trial court erred in this finding. Although there is some evidence in the record to support the lower court's finding that Price was adequately experienced and that Bergeron acted reasonably in allowing him to drive, we find that a review of the evidence as a whole shows that this conclusion was clearly wrong; especially when couched in the appropriate terms of whether allowing Price to drive was a risk encompassed by the statute under the circumstances shown. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
*296 Several of the witnesses did testify that Price was seen driving different automobiles on various occasions. With one exception, however, all of the testimony only indicated that Price would drive a few blocks through his neighborhood to a local convenience store. (The one exception was a 7 to 10 minute drive out of the subdivision.) Moreover, there is no evidence that Price had ever driven at night or had ever received any proper driver training. A two or three block subdivision drive is one thing; a long, late night drive at 50 to 60 miles per hour is another. The driving skills involved are vastly different. The evidence simply does not show that Price had the capability or experience to safely undertake this drive. This conclusion is supported by the testimony from the state police that the accident resulted, at least in part, from driver inexperience. It is also supported by the evidence that Price had been drinking, although the question of his intoxication is disputed. However, the evidence further indicates that Bergeron knew Price had consumed alcohol. Regardless of the actual effect of the alcohol on Price, this fact is another to consider in determining Price's capacity to drive. Based on these conclusions, we find that the evidence reasonably supports a finding that Price did not have the experience to handle the drive he undertook under these circumstances. Accordingly, the duty was breached.

b) CAUSATION
The lower court also ruled that the accident was caused solely by Price's failure to maintain proper control of the van. We disagree with this conclusion. Price's failure to maintain control was not the sole cause of the accident. Bergeron violated a statutory duty that prohibited him from allowing Price to drive. But for the violation of this statutory duty, the accident would not have occurred. That is, had Bergeron not allowed Price to drive, the accident would have been avoided. Winzer v. Lewis, 251 So.2d 650 (La.App. 2d Cir. 1971). Malone, Ruminations on Dixie Drive it Yourself versus American Beverage Company, 30 La.L.Rev. 363 at 380 (1970). Plaintiff has established causation.
We hold that the violation of La.R.S. 32:52 in this case constituted actionable negligence.[2]

c) CONTRIBUTORY NEGLIGENCE
Whether Price's contributory negligence should reduce recovery also presents a difficult question. In Boyer v. Johnson, 360 So.2d 1164 (La.1978) a business operation hired a 15 year old to drive a van. This action was in violation of a statute prohibiting the hiring of minors to drive a motor vehicle for commercial purposes. The minor was subsequently killed in an accident caused in part by his failure to maintain control of his vehicle. The supreme court held that since the boy's death was caused by his inability to handle the vehicle properly, which was one of the dangers the statute was enacted to prevent, his negligence could not be held against him.
Whether Boyer, a pre-comparative negligence case, would be decided the same way in today's comparative negligence era is debatable. It could be argued that Boyer was simply another attempt to get around the harsh all or nothing rule of contributory negligence, and comparative negligence should apply. On the other hand, it could also be argued that even with the advent of comparative negligence, Boyer is the kind of case where pursuant to the duty/risk analysis, a defendant is precluded from asserting contributory negligence to reduce a plaintiff's recovery.[3]Boyer would be a type "(a)" case under Professor *297 Alston Johnson's tripartite categorization of the effect of comparative negligence on the duty/risk analysis, espoused in his article, Comparative Negligence and Duty/Risk Analysis, 40 La.L.Rev. 319 (1980).[4]
Regardless of the outcome to be reached in a Boyer situation, we disagree with plaintiff's contention that Boyer should control this case. An employer hiring a minor to drive commercially creates a substantial risk of harm to the employee and other people. At the same time there is economic gain with little or no risk of harm to the employer. Additionally, the minor employee is not in position to avoid the demand of his employer. In such a case, the extreme imbalance of risks posed by the conduct of the parties may excuse plaintiff's own careless conduct. In this case, no such imbalance of risks exists between the parties. The two boys had an equal personal relationship. Additionally, the conduct of Price and Bergeron exposed both of them and others to the same risks. By his actions Bergeron exposed himself to the same potential risk that Price suffered. He was lucky to have escaped serious injury.
Bergeron breached a duty he owed to Price and his actions make him liable for Price's death. Nevertheless, because there was no extreme imbalance in the risks posed by the conduct they each engaged in, the scope of Bergeron's duty did not extend to protect Price completely against his own carelessness. Accordingly, comparative negligence is applicable between the parties, and recovery should be reduced by Price's degree of culpability. La.C.C. art. 2323.
Some of the factors to be considered in determining the degree and fault to be assigned to each negligent party include:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Watson v. State Farm, 469 So.2d 967, 974. (La.1985).
Both boys seemed equally aware (or unaware) of the danger, and little social significance can be placed on either boys' conduct. Although, Bergeron had a superior capacity in that he could have refused Price permission, Price's actions were more significant, and created a greater risk. In the final analysis, Price lost control of the vehiclenot Bergeron. Bergeron admonished Price to slow down. Although Price was too young to drive, he was nearly fifteen, and should have exercised better judgment. Our sense of justice may find Bergeron culpable, but it finds the much greater degree of culpability rests with Price. We assign eighty per cent of the fault in this accident to the deceased, Price. Twenty per cent of the fault is assigned to Bergeron.

*298 DAMAGES
The trial court did not reach the issue of damages, however, the record is adequate for us to make this determination and avoid a remand. We find that $125,000 will compensate plaintiff for the loss of her son insofar as this can be monetarily accomplished. This amount is reduced by 80% due to the deceased's contributory negligence. La.C.C. art. 2323. Therefore, $25,000 is awarded the plaintiff.
Tommy Bergeron Sr. is liable only because he is vicariously responsible for the actions of his minor son. La.C.C. art. 2318. Therefore, judgment will be rendered against both defendants and State Farm, their insurer. Defendants are cast for all costs.
REVERSED AND RENDERED.
NOTES
[1] The cases the Stephens court cited all pertained to situations involving livestock on highways. These situations were in contravention of various ordinances. In turn, all these cases appear to have sprung from Bentz v. Page, 115 La. 560, 39 So. 599 (1905), which held that pursuant to La.C.C. art. 2321, the owner of a vicious animal has the burden of showing he is without fault. Somewhere along the line, the burden as to the animal was confused with the violation of the statute itself. Thus was a presumption born. There is no basis for using this presumption outside these kinds of cases.
[2] We are aware of Exnicios v. Miller, 346 So.2d 729 (La.App. 1st Cir.1977), however, Exnicios relied on Jones v. Ins. Co. of North America, 303 So.2d 902 (La.App. 1st Cir.1974). Jones was effectively overruled in Boyer, 360 So.2d 1164 at 1168. Furthermore, in Exnicios it was determined that neither the unlicensed minor nor the adult that allowed the minor to drive was at fault.
[3] In dicta, the supreme court has indicated that in some cases contributory negligence will not reduce recovery. See Turner v. New Orleans Public Service, Inc., 476 So.2d 800 (La.1985).
[4] These categories are as follows:

(a) those in which a defendant's duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiff's conduct has produced a situation for which the law should not require a reasonably prudent person to prepare and respond; and (c) those that fall in neither category, in which the victim's fault and the defendant's fault may each be weighed in the balance.
Johnson concluded:
in (a) cases comparative will not reduce the award, in (b) cases comparative will not allow an award even at a reduced level3 and in (c) cases comparative will weight fault.
For a viewpoint opposing Alston Johnston's approach, see: Robertson, Ruminations on Comparative Fault, Duty/Risk Analysis, Affirmative Defenses, and Defensive Doctrines in Negligence and Strict Liability Litigation in Louisiana, 44 La.L.Rev. 1341 (1984).