527 So.2d 1178 (1988)
Michael E. ENLOW, Plaintiff-Appellant,
v.
Ronald M. BLANEY, et al, Defendants-Appellees.
No. 87-442.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*1179 McElroy & Ramsey, R. Scott Ramsey, Berwick, for plaintiff-appellant.
Gold, Weems, Bruser, Sharp, Sues & Rundell, Raymond L. Brown, Jr., Peggy St. John, Alexandria, Theus, Grisham, Davis & Leigh, Phil D. Myers, Monroe, Smith, Taliaferro, Seibert, Boothe & Purvis, Leo Boothe, Jonesville, for defendants-appellees.
Before GUIDRY, FORET and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, operating a motorcycle, collided with a pickup truck driven by Rhonda B. Polk, the minor daughter of Ronald M. Blaney. Plaintiff filed this suit against Ronald M. Blaney and his insurer, Commercial Union Insurance Company (hereafter Commercial Union), seeking damages for the injuries sustained in that accident. Plaintiff subsequently amended his petition to name the Catahoula Parish Police Jury and its insurer, Great Plains Insurance Company, as additional defendants. Defendants, Ronald M. Blaney and Commercial Union, filed a reconventional demand seeking recovery of the damages to the Blaney truck.
After a trial on the merits, the trial court ruled in favor of defendants, dismissing plaintiff's suit and granting judgment on the reconventional demand in favor of Blaney and Commercial Union for $2,570.07. Plaintiff appealed.

FACTS
Plaintiff, operating a motorcycle in an easterly direction on Cash Bayou Road in Catahoula Parish, collided with a pickup truck traveling west driven by Rhonda Blaney Polk, the minor daughter of Ronald M. Blaney. The accident occurred at a curve in the road. Plaintiff's motorcycle struck the pickup truck on its left front, the principal point of impact being the left front wheel. At the time of the accident, the weather was clear and the road was dry.
The only witnesses to the accident were plaintiff, Rhonda Polk, and Missy Smith, a passenger in Rhonda's truck. Rhonda's younger brother, Boo Blaney, was also a passenger in the truck at the time of the accident, but did not testify. The defendant, Ronald Blaney, was also in the vicinity, *1180 following his daughter a short distance behind in another pickup truck. Ronald Blaney did not see the actual collision because he was observing the surrounding soybean fields.
Plaintiff, a 24 year old insurance salesman, was licensed to drive an automobile but did not have a motorcycle endorsement on his driver's license. He was seriously injured in the accident. Rhonda Blaney Polk, the 14 year old driver of defendant's pickup truck, was not licensed to drive. Both plaintiff and Rhonda Blaney Polk lived in the vicinity of the accident and both were familiar with Cash Bayou Road.
On appeal plaintiff urges trial error in the following particulars:
1. The trial court erred when it found defendant, Ronald M. Blaney, to be free of fault in causing the accident.
2. The trial court erred when it concluded that the Catahoula Parish Police Jury was not negligent in failing to provide traffic control devices on Cash Bayou Road.
3. The trial court erred when it concluded that plaintiff was solely responsible for causing the accident on Cash Bayou Road.
4. The trial court erred when it did not find Ronald M. Blaney negligent in permitting his 14 year old daughter to operate a vehicle on a public road without a driver's license.
5. The trial court erred when it did not raise an adverse presumption against defendants as a result of their failing to call seven subpoenaed witnesses.
We have carefully reviewed the record and finding no clear error in the trial court's conclusions, we affirm.
The trial court disposed of all of the issues presented for review except two, which we will address later in this opinion, in the following excellent written reasons for judgment which we are pleased to adopt as our own:
"The Cash Bayou Road.
"Evaluation of the testimony concerning this accident must of necessity take into account the nature and physical characteristics of the Cash Bayou Road. These same factors must also be considered in judging any liability of the Defendants. The possible liability of the Police Jury on the one hand, and Blaney on the other, is governed by different legal principles hereafter set forth.
"The Cash Bayou Road is really not a highway or a road, but should more properly be characterized as a country lane. It originated as an animal or wagon trail located in the dense woodlands of the delta area of Catahoula Parish. As time passed, and the surrounding area began to develop, the Cash Bayou Road evolved with it. Land was cleared and some of the woodlands gave way to cultivated fields. This caused an increase in the amount, and change in the nature of, the traffic flow, and the former wagon trail was graded first and then graveled. Subsequently, the Police Jury developed the road further by a minimum type hard surfacing with a three course blacktop application.
"Cash Bayou Road remains a dead end road, very lightly traveled, located on a narrow right-of-way in a sparsely settled rural area of the Parish. It meets the transportation requirements of the area it serves. There have been no significant complaints about its condition or safety. The curve where this accident occurred is fully visible and was familiar to both Plaintiff and Rhonda Blaney. The road and curve did not constitute any unusually hazardous circumstance, and could in no way be characterized as a trap, even in the case of a motorist traveling it for the first time.
Liability of Ronald M. Blaney.
"Plaintiff seeks to hold Ronald M. Blaney 10% [sic] at fault in this case because of the alleged negligence of his daughter. Blaney does not contest his responsibility for Rhonda's actions in this case, but does deny that she was negligent in any way.
"Plaintiff's case against Blaney, therefore, rests upon general negligence law under Civil [sic] Article 2315. As I understand it, the specific act of negligence which Plaintiff alleges on the part of Rhonda was the alleged failure on her part to *1181 keep the pickup truck driven by her on her right side of the roadway, and the subsequent encroachment into his lane of traffic.
"Both parties presented evidence, including that of a traffic reconstruction expert on each side, giving its version of the point of impact and the way the accident occurred and its cause. After examining that evidence, it is my opinion that the Plaintiff has failed to prove that the point of collision was in his east bound lane of traffic. I feel that the Defendants, who, of course, did not have any burden of proof, presented the more credible evidence which indicates that the point of impact was at or near the center line of the roadway. It was, if anything, in Rhonda Blaney's west bound lane of traffic. It should be noted that this is a narrow road and even when a pickup truck is on its own side that the left side of the truck is very near the center of the road.
"I was particularly persuaded by the testimony of Missy Smith and of the Trooper Kemp, who was the investigating officer, and the other physical evidence located on the highway.
"It is conceded that Rhonda Blaney approached this curve at a reasonable and lawful rate of speed, and that there was no other evidence of improper operation of the vehicle on her part. The two parties, Plaintiff and Rhonda, gave different testimony with respect to the point of impact, but Rhonda's is corroborated by the other evidence mentioned above.
"This road and curve were known to both Plaintiff and Rhonda and each party, in approaching the curve, was under the same duty of being aware that visibility was limited, and that an approaching vehicle could be anticipated. Configuration of the curve and the surrounding physical characteristics of the land convinced me that Plaintiff, approaching from the west, had a much better view of oncoming traffic than Rhonda who was approaching from the east, west bound. (See exhibit P-19Note particularly the respective angles of expanding vision of Plaintiff from 140 feet to the point of impact as compared to those of Rhonda which remained almost static up to the point of impact.) In my opinion, Rhonda exercised the proper standard of care and there is no liability on her part. I have a different conclusion with respect to Plaintiff's action, as will be set out hereafter.
"Finally, I found the testimony of the Defendant's expert as to the point of collision and other aspects of the case to be more credible than that of Plaintifff's expert.
"I therefore conclude that Rhonda was not negligent in this case and Plaintiff's claim against Ronald M. Blaney must be rejected as [sic] his cost.
Liability of the Police Jury.
"Plaintiff seeks to hold the Police Jury liable in this case on both a theory of negligence (Civil Code Article 2315) and strict liability (Civil Code Article 2317; Loescher v. Parr, 324 So2d 441 (La.1975).
"The basic law applicable to the responsibility of the Litigants is found in the following quotation from the case of Dabov v. Allstate Insurance Company, 302 So2d 697 (La.App. 3d Cir.1974)[1]:
`[1,2] The Police Jury is not responsible for every accident which may occur on a parish road, nor is it a guarantor of the safety of travelers thereon or an insurer against all injury which may result from obstructions on or defects in such a road. The duty of the Police Jury is only to see that parish roads are reasonably safe for persons exercising ordinary care and reasonable prudence. The Police Jury, however, is liable for damages caused by defects in a parish road which are in the nature of "traps," and are sufficiently dangerous to cause an accident and an injury to a motorist using the highway in a reasonably prudent manner, if the Police Jury has had actual or constructive notice of the defect. Dupre v. Louisiana Department of Highways, 154 So.2d 579 (La.App. 3 Cir.1963).
`[3] The driver of a motor vehicle is under a never ceasing duty to maintain a proper lookout and to see that which he should have seen. His failure to see that which he should have seen *1182 constitutes negligence. He is required to maintain such control over the speed and operation of his vehicle as to permit him to stop within the range of his legally proper lookout. There are exceptions to this rule, but those exceptions apply only in situations where the accident occurs suddenly and without warning, or where it results from a dangerous condition which could not have been detected by a driver who was maintaining a proper lookout and proper control over his vehicle. DeGregory v. State Department of Highways, 192 So.2d 834 (La.App. 1 Cir. 1966).
`[4] Under LSA-R.S. 32:235(B) the Police Jury has the responsibility of maintaining traffic signs and controls within its jurisdiction, including signs to warn motorists of hazardous conditions. Its failure to do so constitutes negligent conduct. Hall v. State Department of Highways, 213 So.2d 169 (La.App. 3 Cir.1968); Falgout v. Falgout, 251 So.2d 424 (La.App. 1 Cir. 1971).'
"At the same time the Third Circuit Court of Appeal was deciding Dabov, supra, the Supreme Court was deciding the case of Vervik v. State, Department of Highways, 302 So. [sic] 895 (La.1974). In that case, Justice Barham, in an opinion on rehearing, after citing LSA:R.S. 32:235, stated in part as follows:
`If we were to determine that a violation of a regulation is negligence, per se, we could find negligence on that basis in the case at hand. However, this Court has rejected the assigning of civil negligence, per se, upon violation of penal and regulatory statutes.' (Emphasis supplied.)
"The negligence which Plaintiff attributes to the Police Jury in this case is based primarily upon its allegations that the Police Jury had failed to comply with LSA:R. S. 32:235 in that Cash Bayou Road was not properly signed and marked in accordance with that statute and the Manual on Uniform Traffic Control Devices (MUTCD).
"Cash Bayou Road was not signed and marked, and in particular, there were no center markings on the road at this curve, nor were there signs indicating the presence of the curve. The wording of LSA:R. S. 32:235 does not require any specific marking such as those advocated by the Plaintiff, but simply states:
`Local, municipal and Parish authorities in their respective jurisdictions shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter, regulations of the Department and Commissioner adopted pursuant thereto, and local traffic ordinances adopted pursuant to authority granted by RS 32:41 and RS 32:42. ...'
*Emphasis supplied.
The statute then provides further that if traffic control devices are deemed necessary and are thereafter erected, that they shall conform to the Department's manual on specifications (The MUTCD).
"The Legislative intent of LSA:RS 32:235 is such that there must first be a determination that certain traffic control devices are necessary, and then when erected that they be uniform and comply with MUTCD. In other words, there is no imperative in MUTCD itself or RS 32:235 that particular traffic control devices be erected. The predicate to application of MUTCD is the executive finding that particular devices are necessary in a particular situation. The Legislative directive in the statute to the executive is not such that every curve must be signed or that every road must be center lined.
"Likewise, the statute does not contemplate after the fact intervention by third party experts or the judiciary who may, with benefit of hindsight, and without accountability for the decision, determine that certain steps may have been preferable or desirable in any particular case.
"There is no evidence that the original decision of the Police Jury to grade the original dirt primitive trail was unreasonable, or that its later decision to upgrade it by graveling it was unreasonable, or that the even later decision to transform the road from gravel to a minimum type blacktopping as existed at the time of this accident was unreasonable. In fact, the presumption *1183 would have to be to the contrary, since no trap or unusually hazardous situation was created. The Police Jury cannot be faulted for deciding to keep the public traveling Cash Bayou Road out of dust and mud.
"The absence of signing or marking the Cash Bayou Road was not negligence, per se, nor as pointed out, is there any other evidence of negligence. Moreover, the absence of signing or marking did not contribute in any way to this accident and was neither the legal or actual cause of the accident.
"I therefore find no liability of the Police Jury in this case on the basis of negligence.
Strict Liability of the Police Jury.
"Strict liability of the Police Jury requires that the Plaintiff prove:
(1) The thing which caused the injury was under the care, custody and control of the Department;
(2) The thing was defective in that it posed a condition creating an unreasonable risk of harm;
(3) The defective thing caused the injury complained of.
Loescher v. Parr, supra.
"Plaintiff claims that he has proved all three of these required elements. I disagree.
"Much of what has been said, Supra, concerning the negligence of the Police Jury applies equally here with respect to strict liability and will not be repeated.
"Plaintiff did prove that Cash Bayou Road was under the care, custody and control of the Police Jury, but that is all. Plaintiff completely failed to prove that Cash Bayou Road posed a condition creating an unreasonable risk of harm and that Cash Bayou Road caused the injury complained of. Plaintiff's case rested principally upon the testimony of his expert with respect to alleged defects and shortcomings of Cash Bayou Road. Much, if not all, of this testimony was countered by the testimony of the Defendant's expert which I found to be more credible. It does not take expert testimony for one to conclude that Cash Bayou Road is not an ideal thoroughfare from a purely technical and scientific point of view, but it was not in such condition as to create an unreasonable risk of harm to the traveling public. In reaching this conclusion, I have considered all of the factors and instructions found in the case of Entrevia v. Hood, 427 So2d 1146 (La.1983).
"There are many country lanes and other roads, both in this country and elsewhere, which do not meet technical safety standards from the technician's viewpoint. There are many valid reasons why such roads as Cash Bayou Road exist which have not been discussed here, including financial, ecological and even aesthetic considerations, which are totally ignored by experts. In many of these instances, the roads and lands [sic] are much more heavily traveled than is Cash Bayou Road, but it cannot be said that in such cases the public bodies responsible for them are maintaining unreasonable hazardous conditions and are automatically liable. If such conditions do exist, it is the burden upon the complaining party to prove it. Plaintiff has not done so in this case.
"If it was necessary that Cash Bayou Road meet standards of an interstate highway, it was incumbent upon Plaintiff to prove it. If it was necessary that Cash Bayou Road meet the standards prescribed by an ordinary Federal aid highway, it was necessary for Plaintiff to prove it. If it was necessary that Cash Bayou Road meet the standards of a secondary road system found in the State system, it was necessary that Plaintiff prove it.
"Accordingly, I find no basis upon which to find that the doctrine of strict liability should be applied to the Police Jury in this case.
Liability of Plaintiff.
"Much of what has been said, Supra, concerning the negligence of Rhonda Blaney, is applicable here and will not be repeated, except to note the previously expressed opinion that the point of impact in this case was at or near the center of the road and, if anything, in Rhonda Blaney's lane of traffic. I have also previously noted that both Plaintiff and Rhonda had the obligation of approaching this curve in a careful and an observant manner, and that *1184 the Plaintiff actually had better visibility than did Rhonda. The legal duty to maintain proper lookout and control is set out in the quotation from the Dabov case, Supra.
"In the circumstances present here, a reasonably careful and observant motorcycle operator would have approached this curve in the Cash Bayou Road with caution, and with reasonable anticipation of meeting an oncoming vehicle such as a pickup truck in the narrow curve. This would require that he keep well to his right on the inside of the curve. Had Plaintiff done this, and remained out of Rhonda Blaney's lane of traffic, the accident would not have happened. He approached the curve too far in the opposite lane of traffic and that, coupled with his failure to keep a proper lookout and control of his vehicle, not Cash Bayou Road or the actions of Rhonda Blaney, is what caused this accident.
"Having found Plaintiff to be negligent and the cause of the damages to Ronald M. Blaney's pickup truck, Plaintiff is liable to Ronald M. Blaney for those damages."
Plaintiff urges that the trial court erred when it did not find Ronald M. Blaney negligent in permitting his 14 year old daughter to operate a vehicle on a public road without a driver's license, a violation of La.R.S. 32:52.
Although defendant's daughter was in violation of La.R.S. 32:52 by failing to possess a driver's license, it is of no moment because:
"In order for the violation of a safety statute to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause in fact of the accident. Boyer v. Johnson, 360 So.2d 1164 (La.1978); Dixie Drive it Yourself System New Orleans, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962)."
Snyder v. Bergeron, 501 So.2d 291, 293 (La.App. 1st Cir.1986), writ denied, 503 So. 2d 483 (La.1987).
Rhonda's conduct in driving without a license was not a cause-in-fact of the accident. Therefore, the fact that Ronald Blaney permitted his minor daughter to drive without a license is immaterial and irrelevant.
Finally, plaintiff urges that the trial court erred when it failed to consider adverse to defendants the fact that defendants failed to call several witnesses allegedly subpoenaed by them.
The record does not reflect that the several persons named in appellant's brief as alleged witnesses for defendants were in fact subpoenaed by defendants. Additionally, appellant failed to demonstrate that any of these alleged witnesses possessed particular knowledge not possessed by any other witnesses, which would trigger such a presumption. Rond v. Sims, 355 So.2d 591, 593 (La.App. 4th Cir.1978), writ denied, 357 So.2d 1164 (La.1978). Finally, we note that the alleged witnesses were equally available to plaintiff as they were to the defendants. The trial court did not err in this regard.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Appellant is cast with all costs of this appeal.
AFFIRMED.
NOTES
[1] Writ denied, 305 So.2d 539, 540 (La.1975).