541 So.2d 371 (1989)
Carolyn Emerson ARMOUR, Appellant,
v.
Daniel Andrew ARMOUR, et al., Appellees.
No. 20425-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
Rehearing Denied April 20, 1989.
Writ Denied June 30, 1989.
*372 Randy D. Elkins, Minden, for appellant.
Kitchens, Benton, Kitchens, Bolin & Warren by Bruce M. Bolin, Minden, for appellees.
Before FRED W. JONES, Jr., LINDSAY and HIGHTOWER, JJ.
FRED W. JONES, Jr., Judge.
A mother sued her former husband for the wrongful death of their 14 year old son. From a judgment in favor of the defendant, the plaintiff appealed. For the following reasons, we affirm.
Fourteen year old Mark Armour resided in Magnolia, Arkansas with his mother, who was the domiciliary parent under the joint custody agreement existing between the parties. He was spending the weekend with his father in Shongaloo, Louisiana when this fatal accident occurred in the early morning hours of July 12, 1987.
Mark had asked for permission to use his father's vehicle to drive to Springhill on Saturday night for a date. As we was returning to his father's home, while traveling down a two-lane country road, he lost control of his father's car in a curve, swerved into a ditch, and hit an electrical utility pole. The impact toppled the utility pole, causing high voltage electrical wires to dangle about four feet above the ground, and knocked Mark unconscious. After regaining consciousness, he stumbled out of the ditch and into the low hanging electrical wires, and was instantly electrocuted.
At the time of the accident, Mark was fourteen years old and did not have a valid driver's license, only a "learner's permit" issued to him by the state of Arkansas. The car he was driving was leased by GMAC to his father, defendant Daniel Armour. Mark sustained only minor injuries in the accident; the cause of death was established by the coroner's office to be electrocution.
Plaintiff Carolyn Armour, the deceased's mother, sued the deceased's father, along with Louisiana Power and Light electrical company, for the wrongful death of her son. LP & L was later voluntarily dismissed. Plaintiff alleged the negligence of Mark's father in allowing the unlicensed minor child to drive without supervision, in violation of La.R.S. 32:52 and 32:416, was the cause of the child's death.
Defendant answered, denying that he was negligent, and claiming that even if negligent, his conduct was not the cause of *373 the accident and Mark's death. He also alleged that his ex-wife was negligent in allowing their son to operate motor vehicles on the public roads of Louisiana and Arkansas, and in failing to properly supervise the child, and that his son's negligence precluded plaintiff's recovery.
The trial judge ruled for defendant, finding that plaintiff was estopped from recovering for the wrongful death of her son because of her conduct in acquiescing in his repeated trips alone to his father's home; that decedent was a reasonably experienced driver "on account of his years of dirt bike driving and his several months of operating motor vehicles", and thus not within the scope of protection intended by La.R.S. 32:416 and 32:52; and that the accident was caused by the negligence of the decedent.
The issue raised on appeal is whether defendant, a licensed driver who allowed his unlicensed fourteen year old son to drive alone and without supervision, in violation of safety statutes, was negligent under the circumstances of this case, and should therefore be held liable for his son's resulting death.
Under La.C.C.Art. 2315, which grants plaintiff a cause of action for her son's wrongful death, she may recover if she proves defendant had a duty to observe a certain standard of care toward Mark; that he breached this duty by falling below this standard; that this breach of duty was a cause-in-fact of the boy's death; and that the harm which occurred was the sort of harm that the defendant's legal duty was designed to protect against. Dixie Drive It Yourself System New Orleans, Co. Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Boyer v. Johnson, 360 So.2d 1164 (La.1978).
The duty plaintiff alleges was breached by defendant is that imposed on licensed drivers by La.R.S. 32:52 to prevent unlicensed drivers from driving without the supervision of a licensed driver, and 32:416, which prohibits parents from allowing their children under the age of 15 to drive motor vehicles on any highway. Plaintiff contends that the trial court erred by not finding that these statutory violations constituted actionable negligence on defendant's part.
The fact that defendant violated criminal safety statutes is not alone determinative, however, for the doctrine of "negligence per se" has been repudiated in this state. A violation of a criminal statute does not automatically create civil liability in a particular case. In order to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause-in-fact of the accident. Weber v. Phoenix Assurance Co. of New York, et al., 273 So.2d 30 (La.1973); Boyer v. Johnson, supra.
We find defendant's conduct was a cause-in-fact of this accident, and the resulting death of the minor. Although it is true, as defendant asserts, that the immediate cause of his son's death was electrocution, Mark was driving alone on this particular evening because his father allowed him to do so. The fact that his death was not caused by the injuries he sustained in the automobile accident does not prevent a finding of causation. "But-for" his father's grant of permission, he would not have had this accident, which caused the electrical wires to hang dangerously low, and thus would not have walked into the power lines and been killed.
The inquiry does not end with a finding of causation, however. Since the Supreme Court's adoption of the duty/risk approach to resolution of negligence questions, a defendant's liability is established, and a plaintiff may prevail, only if the risk of the harm that actually occurred fell within the scope of the duty breached. Thus the fundamental inquiry in this case, as phrased by the Supreme Court in the Boyer case, cited above, is: Did the defendant violate laws designed to prevent this type of harm?" In Boyer, the Supreme Court held the risk that a minor employed to drive commercial motor vehicles in violation of child labor laws would be killed in a motor vehicle accident fell within the scope of the *374 statutory duty not to hire minors for this purpose, and imposed civil liability on the employer for the child's death.
In Snyder v. Bergeron, 501 So.2d 291 (La.App. 1st Cir.1986), writ denied, 503 So. 2d 483 (La.1987), which is factually very similar to this case, the First Circuit found that La.R.S. 32:52 was enacted at least in part to protect the motoring public by preventing inexperienced and incapable persons from operating motor vehicles on state highways. Thus the risk that a 14 year old unlicensed driver would be killed due to his own negligence when allowed to drive by a fifteen year old licensed driver could be within the scope of protection of the statute.
However, that court found that the scope of the statute's protection does not extend to competent and experienced drivers, explaining:
"Nevertheless, if (as defendants maintain) Price, despite his age, was a competent and experienced driver, then we believe that this particular risk was outside the scope of the risks in question. There would be no breach because the scope of the duty to keep inexperienced minors from driving necessarily does not include the risks associated with letting an experienced minor drive. Experienced drivers manage to engage themselves in auto accidents all the time". Snyder, supra, at 295.
The court then examined the record to determine what findings were established regarding the driving skills of the deceased.
We agree with this reasoning, and find that the record supports the trial judge's finding that Mark Armour was an experienced and competent driver (even though he was only 14 years of age and did not yet have a valid driver's license.)
Before his death, Mark frequently drove the 25 mile trip from his mother's home in Magnolia to his father's home in Shongaloo alone, in a car furnished to him by his father. Sometimes Mark's nine year old brother accompanied him. His mother was aware of this practice, although she testified that she never condoned or "permitted" it, and in fact vigorously voiced her opposition to both Mark and his father. She also said she informed defendant that Mark did not have a valid driver's license, but only a "learner's permit".
On the other hand, defendant testified that he was not aware that Mark was legally restricted from driving without adult supervision until after the accident, and that his ex-wife never informed him of this.
There was a substantial amount of testimony concerning Mark's experience driving both motorcycles and automobiles. He was only about one and one-half months short of his fifteenth birthday when he died. About eight and one-half months earlier he secured a restricted driver's license ("learner's permit") in Arkansas through his mother's encouragement and cooperation. Although he took the written portion of the driving exam three times before passing, he easily passed the driving part on his first try. Even before getting the learner's permit, he had been allowed to drive back and forth on weekends between his mother's residence in Magnolia and his father's residence in Shongaloo. After getting the permit, he began to keep "his car," a 1969 Pontiac Firebird which was registered to Mr. Armour, at his mother's residence in Magnolia. After that time, he drove back and forth regularly on weekends to his father's residence in Shongaloo without an adult in the car and frequently with his nine-year old brother traveling with him. His mother stated he also, on those occasions, repeatedly drove home late after dark from his father's.
He also would occasionally drive to school in Magnolia in his mother's Buick with her as a passenger. Those trips to school were for a distance of about four miles and through the central part of town in Magnolia. That occurred about 15 or 20 times. The trips to Shongaloo occurred almost every weekend and in excess of 30 times. He also drove about four miles with his grandmother in Magnolia approximately eight to ten times.
Mark Armour also had extensive experience operating motorcycles as a young boy.
*375 He began driving a dirt bike when he was six years of age and thereafter always had some type of motorcycle. His parents bought some five or six successive motorcycles for him and beginning at the age of ten, he successfully raced in motorcycle competitions. At about the age of 12, when his parents were still living together, he would occasionally drive an older pickup truck on their farm near Shongaloo. Thus Mark Armour was clearly more experienced at driving than one would expect the average 15 year old to be.
In summary, the trial judge was not clearly wrong in concluding Mark Armour was an experienced driver. Therefore, the defendant did not breach his duty to keep an inexperienced minor from operating his vehicle. Consequently, defendant was not guilty of negligence. Plaintiff's conduct, while not estopping her from recovering for her son's wrongful death, is further evidence of the son's driving experience of which the defendant was awareand assists in defining the scope of defendant's duty.
For these reasons, we AFFIRM the judgment of the district court, at appellant's cost.
HIGHTOWER, J., concurs with written reasons.
LINDSAY, J., concurs for reasons assigned by HIGHTOWER, J.
HIGHTOWER, Judge, concurring.
Observing that in Louisiana we do not recognize negligence per se, I find no necessity to address the issue of causation as concerns the broad duty of a parent not to violate the LSA-R.S. 32:52 and 32:416 statutes. Our inquiry should begin with whether a breach of the more specific duty, the duty not to allow an inexperienced minor to drive, occurred. Had such a breach been found, only then would it have been necessary to decide if causation arose from that breach.
Accordingly, I concur in the result, but do not join in that portion of the decision addressing causation as it might arise from any violation of the broader duty of a parent not to allow a child to drive in contravention of safety statutes.

ON APPLICATION FOR REHEARING
Before FRED W. JONES, Jr., LINDSAY, HIGHTOWER, HALL and MARVIN, JJ.
Rehearing denied.