585 So.2d 597 (1991)
Vicki LOVEDAY, Plaintiff and Appellant-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Monroe Trucking, Inc. and Hiram E. Jowers, Defendants and Appellees-Appellants.
No. 90-62.
Court of Appeal of Louisiana, Third Circuit.
August 2, 1991.
Rehearing Denied September 13, 1991.
Writ Denied December 2, 1991.
*599 Book & Beverung, Fred Book, Steve Beverung, Lake Charles, for plaintiff and appellant-appellee.
Woodley, Williams, Fenet, Palmer, Boudreau & Norman, James E. Williams, Tynes, Fraser, Roach & Morris, Maurice Tynes, Lake Charles, for defendants and appellees-appellants.
Thomas Sanders, Lake Charles, for Allstate, and Vicki Loveday.
Plauche, Smith & Nieset, A.R. Johnson, IV, Lake Charles, for Floyd, Tenn Ins. Co.
Before STOKER, LABORDE and KNOLL, JJ.
STOKER, Judge.
We consider here appeals in two separate suits for damages arising out of a collision of vehicles. On June 10, 1987, at 4:55 a.m. while it was yet dark a small pickup truck rear ended an eighteen-wheeler tractor-trailer on Interstate 10. Ronald Kent Loveday (Kent) drove the pickup truck which was owned by his sister, Vicki Loveday. Vicki was a guest passenger in the pickup truck but was asleep. Kent was fifteen years old at the time and was not licensed to drive. Hiram E. Jowers was driving the tractor-trailer as an employee of Monroe Trucking, Inc., which owned the unit. Traveler's Insurance Company insured the unit.
The accident occurred near the intersection of I-10 and U.S. 165 in Jefferson Davis Parish. Kent was driving west on I-10 when he passed a pickup truck driven by Robert Kidder near the base of the overpass over U.S. 165. Vicki Loveday was asleep in the passenger seat. A short time before the collision Jowers had parked his eighteen-wheeler on the shoulder of I-10, on or just beyond the acceleration lane of the on-ramp from U.S. 165 onto I-10, to check for a flat tire. Jowers satisfied himself that his tire was all right, got into his truck, and commenced to proceed west on the shoulder of I-10 preparatory to re-entering the highway's right travel lane.
Meanwhile, after Kent had passed Kidder's pickup truck, he returned to the right travel lane of I-10. Almost immediately after he did so, the Loveday pickup, traveling at 65 to 75 miles per hour, rear-ended Jowers' eighteen-wheeler which was partially on the right travel lane and proceeding at 15 to 25 miles per hour.
Ronald Kent Loveday was fatally injured in the accident and Vicki Loveday sustained severe injuries. Jowers was not injured.
Kent's parents, Ava Loveday and Floyd E. Loveday, filed wrongful death and survival actions based on the injury to their son and his death. Apparently the survival action was not pursued. Vicki Loveday filed a separate suit for her damages resulting from her injuries. The plaintiffs in the two suits sued the same defendants:
*600 Hiram E. Jowers, Monroe Trucking, Inc., and Travelers Insurance Company. The two suits were consolidated for trial, and we consider both in this opinion but render a separate opinion in the parents suit, Loveday, 585 So.2d 606 (La.App. 3d Cir.1991).
In the parents' suit, Monroe Trucking, Inc. filed reconventional demands against Ava and Floyd Loveday, individually and as administrator of Kent's estate, Vicki Loveday and Allstate, claiming property damages to the eighteen-wheeler. In Vicki's suit Allstate filed a reconventional demand against the original defendants seeking reimbursement for damages paid under the collision provisions of Vicki's policy. Finally, defendants filed a third party demand against Tennessee Farmers Mutual Insurance Co., Floyd Loveday's insurer, alleging individual negligence on Floyd's part.
The jury apportioned fault for the accident as follows:

Hiram E. Jowers 15%
Vicki Loveday 42.5%
Ronald Loveday 42.5%

The jury assessed damages as follows:
Vicki Loveday:

 Medical expenses $7,321.86
 General damages .00
Floyd and Ava Loveday:
 General damages $25,000
 (each)
 Funeral expenses $4,768.17

The trial judge granted a motion for a directed verdict dismissing the third party demand against Tennessee Farmers Mutual Insurance Co. The trial judge also granted plaintiffs' motion for a JNOV, awarding $30,000.00 in general damages to Vicki Loveday and increasing the wrongful death damages to Floyd and Ava Loveday to $100,000.00 each.
Plaintiffs appeal this judgment on the issues of fault and quantum. Defendants have also appealed on the issue of quantum. Allstate has answered the appeal protectively, in the event the allocation of fault is changed. We reverse in part and modify the judgment.

FAULT OF VICKI LOVEDAY
Plaintiffs contend on appeal that the jury erred in assessing fault to Vicki Loveday since she was only a guest passenger in the vehicle driven by her brother, Kent. Plaintiffs argue that a guest passenger owes no duty to supervise the driver. Defendants argue that Vicki was negligent in permitting Kent, an unlicensed driver, to drive and in failing to actively supervise his driving.
A guest passenger in an automobile has no duty to supervise the driver. Although some cases have stated that a passenger may be at fault for failing to protest excessive speed, in the ordinary situation a passenger is at the mercy of his driver. Unless there is some other basis for liability, a passenger is entitled to entrust his safety to the driver. Adams v. Security Ins. Co. of Hartford, 543 So.2d 480 (La.1989). We do not find any justification in the record for finding negligence on the part of Vicki for failing to stay awake while Kent drove her truck. However, the basis for Vicki's fault which is seriously urged by defendants is her violation of LSA-R.S. 32:52, in permitting an unlicensed minor to drive her pickup truck.
It is long-settled law that a violation of a criminal statute does not automatically create liability in a civil case. Violation of a criminal statute, in this case LSA-R.S. 32:52, which requires the driver of a motor vehicle to be licensed, does not constitute negligence and is not actionable unless the violation bears a causal relation to the accident sued on. In order for the violation of a safety statute to constitute actionable negligence, the violation must be encompassed within the scope of the risks that the statute was designed to protect against, and the violation must be a cause-in-fact of the accident. See Wright v. O'Neal, 427 So.2d 852 (La.1983); Boyer v. Johnson, 360 So.2d 1164 (La.1978); Armour v. Armour, 541 So.2d 371 (La.App. 2d Cir.), writ denied, 546 So.2d 1217 (La.1989); Enlow v. Blaney, 527 So.2d 1178 (La.App. 3d Cir.), writ denied, 532 So.2d 151 (La. 1988); McCarroll v. Kinchen, 526 So.2d 484 (La.App. 1st Cir.), writ denied, 532 *601 So.2d 158 (La.1988); Snyder v. Bergeron, 501 So.2d 291 (La.App. 1st Cir.1986), writ denied, 503 So.2d 483 (La.1987); Exnicios v. Miller, 346 So.2d 729 (La.App. 1st Cir.), writ not consid., 349 So.2d 881 (La. 1977).
LSA-R.S. 32:52 prohibits an unlicensed driver from driving and prohibits a driver from allowing an unlicensed driver to drive. The intent of this statute, at least in part, is to protect the motoring public as well as the unlicensed driver by preventing inexperienced and incapable persons from operating motor vehicles on public roads. It is implicit in this scheme that the legislature considers minors under the age of fifteen too young, inexperienced and immature to drive. The statute imposes a duty to prevent inexperienced minors from operating motor vehicles on public roads. However, if an unlicensed minor, despite his age, is a competent and experienced driver, then the risk of allowing him to drive is outside the scope of the risks that LSA-R.S. 32:52 was intended to protect against. As has been noted, "[e]xperienced drivers manage to engage themselves in auto accidents all the time." Armour, supra; Snyder, supra. See also, Fowler v. Gulf Ins. Co., 306 So.2d 406 (La.App. 3d Cir. 1975).
Defendants had the burden of showing that Vicki's violation of LSA-R.S. 32:52, in allowing Kent to drive her vehicle, was a cause of the accident. McCarroll, supra. We find that defendants failed to carry their burden of proof.
The evidence clearly shows that Kent was an experienced driver. Kent's father, Floyd, began teaching Kent to drive when he was twelve years old. Kent had been driving for 2½ to 3 years. He had driven both in town and on the interstate and had operated several different vehicles, including Vicki's truck. He had previously driven on long trips with his parents. He had never had an accident or a citation. Both of his parents considered him a good, capable driver and they had each advised Vicki to allow Kent to do some of the driving on the long trip from Tennessee to Texas.
Therefore, we find that a lack of driving experience was not a causative factor in the accident. Vicki Loveday did not breach a duty to prevent an inexperienced minor from driving her vehicle. The jury clearly erred in assigning fault for the accident to Vicki and, accordingly, we will reverse that part of the judgment assessing 42.5% fault to Vicki Loveday. We find that she was not at fault to any degree.

FAULT OF HIRAM JOWERS AND KENT LOVEDAY
Plaintiffs next contend on appeal that the jury erred in finding Hiram Jowers only 15% at fault in causing the accident. We agree.
The testimony of two experts in accident reconstruction, Ray Herd and Dr. Olin Dart, was introduced at trial. Both experts based their opinions on the damage to the vehicles, the distance the vehicles traveled after impact and their own personal experience.
Both experts testified that Jowers' eighteen-wheeler was about six feet into the right, or slow, lane and that the Loveday pickup was entirely within the right lane. The two vehicles impacted about four feet across each bumper. In other words, the two vehicles "overlapped" by about four feet at impact. The eighteen-wheeler apparently did not enter the interstate abruptly. Also, the lack of skid marks indicates that Kent Loveday did not attempt to apply his brakes and apparently failed to see the eighteen-wheeler until it was too late. Jowers testified that he never saw either the Loveday pickup or Kidder's vehicle.
Both experts testified that Kent Loveday should have seen the eighteen-wheeler, that Hiram Jowers should have seen the Loveday pickup and that Hiram Jowers should have been traveling faster when he entered the right lane of the interstate.
The maximum speed limit on I-10 is 65 miles per hour. Ray Herd testified that, in his opinion, Kent Loveday was driving at 60-65 miles per hour and Hiram Jowers was driving at 15-20 miles per hour. Dr. Dart testified that, in his opinion, Kent Loveday was driving at 70-75 miles per hour and Hiram Jowers was driving at 20-25 *602 miles per hour. Kidder, the sole eyewitness to the accident, testified that Loveday was driving at about 65 miles per hour and that Jowers was driving very slowly. Officer Kenneth D. Bailey, the investigating officer, testified that, in his opinion, the pick-up was traveling about 65 miles per hour and the eighteen-wheeler was traveling about 30 miles per hour. Jowers testified that he was driving 45 miles per hour.
Under LSA-R.S. 32:64(B), Jowers had a duty not to drive at such a slow speed as to impede the normal and reasonable movement of traffic. It is just as inherently dangerous for a vehicle to move at an unreasonably slow speed on the highways as it is to travel at an excessive speed. Either of these factors can be a contributing cause to an accident. The "slow-speed statute" is a protective statute having the same purpose and intent as the section of the Highway Regulatory Act prohibiting the stopping or parking of a vehicle on the paved portion of a highway. Anders v. Eagle Motor Lines, Inc., 292 So.2d 855 (La.App. 2d Cir.1974); Fairbanks v. Travelers Ins. Co., 232 So.2d 323 (La.App. 2d Cir.), writ refused, 255 La. 1097, 234 So.2d 194 (1970).
The true cause of this type of collision is the closing of the distance between a fast moving and a slow moving vehicle in such a short period of time that the driver of the fast moving vehicle will likely not be capable of exercising the required degree of perception to avoid a collision. Thus, the slightest degree of inattentiveness by the driver of a fast moving vehicle coupled with the unexpected presence of the unreasonably slow moving vehicle combines to cause a collision. Therefore, the negligence of each driver is a cause in fact of the accident. Fairbanks, supra at 327.
It is clear from the testimony and evidence that Jowers breached the duty set forth under LSA-R.S. 32:64(B) by failing to accelerate his speed sufficiently prior to attempting to re-enter the interstate from the shoulder. This negligence was a cause in fact of the accident.
Also, under LSA-R.S. 32:124 Jowers had a duty, in attempting to enter the interstate from the shoulder, to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. A motorist attempting to enter the highway from the shoulder of the road is held to the same standard of care as the motorist entering a highway from a private driveway. The motorist entering a highway from a private driveway has the primary duty to avoid a collision. Sholar v. U.S. Fire Ins. Co., 261 So.2d 327 (La.App. 1st Cir.1972). Also, Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972); Boutte v. Rig Hammers, Inc., 303 So.2d 805 (La.App. 3d Cir.1974); Bates v. Lagars, 193 So.2d 375 (La.App. 2d Cir.1966), writ refused, 250 La. 267, 195 So.2d 146 (1967).
This duty becomes more onerous as the hazards increase and requires a motorist to use every reasonable means available to ascertain that his entry onto the highway may be made in safety. Further, such a driver is required to keep a lookout for vehicles upon the highway and to desist from entering until it is apparent to a reasonably prudent person that such can be done in safety. Soileau v. LaFosse, 558 So.2d 294 (La.App. 3d Cir.1990); Wells v. Allstate Insurance Co., 510 So.2d 763 (La. App. 1st Cir.) writ denied, 514 So.2d 463 (La.1987); Hardee v. St. Paul Fire and Marine Ins. Co., 445 So.2d 771 (La.App. 3d Cir. 1984).
Jowers admitted at trial that he never saw either the Loveday or the Kidder vehicle. The expert witnesses found no reason why he should not have seen them, had he looked. The darkness was a hazard which necessitated the exercise of greater caution by Jowers in his entry maneuver. However, Jowers testified that, after initially looking to see if the highway was clear prior to starting to drive down the shoulder in order to re-enter the interstate, he never checked the highway traffic again. Jowers failed to "use every available means" to ascertain that he could re-enter the highway in safety. He failed to keep a proper lookout for vehicles upon the highway. Jowers breached his primary duty to yield the right of way to Loveday.
*603 Defendants argue, and the jury apparently found that Kent Loveday was at fault in speeding or in failing to observe the eighteen-wheeler and take evasive action. A motorist traveling on a high-speed, multilane highway is not required to anticipate that a motorist entering the highway will not yield the right of way. Bland v. Interstate Fire and Cas. Co., 311 So.2d 480 (La.App. 4th Cir.1975). See also, Dowden v. Miller, 415 So.2d 283 (La.App. 1st Cir.), writ granted on other grounds, 425 So.2d 706 (La.1982).
Kent Loveday may have been driving up to 10 miles per hour over the speed limit, according to Dr. Dart. However, if so, we do not find that Kent was negligent in doing so; there was little traffic on the highway at 4:55 a.m., the highway was designed for speeds in excess of 70 miles per hour and he had just completed a passing maneuver around the Kidder vehicle. Kent's speed was not a causative factor in the accident.
However, Kent was negligent in failing to perceive the eighteen-wheeler, which had entered the interstate gradually rather than abruptly. The evidence indicates that, although Kent could have and should have seen the eighteen-wheeler, he did not. Kent took no evasive action at all; he did not even brake. Kent simply drove into the rear of the eighteen-wheeler. Although Kent did not have a legal duty to yield the right of way to Jowers, he could have taken evasive action had he timely observed the eighteen-wheeler. Kent's inattentiveness was a cause-in-fact of the accident. The jury was not clearly wrong in finding Kent Loveday contributorily negligent. See Fairbanks, supra.
We turn now to an assessment of comparative fault. In Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La. 1985), the supreme court stated that a jury's determination of comparative fault should not be affirmed merely because it has a reasonable basis. Mohr v. State Farm Ins. Co., 528 So.2d 144 (La.1988). The factors enumerated in Watson, supra at 974, for determining the degree of fault assigned are as follows:
"(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties."
We find that the jury clearly erred in assigning more fault to Kent Loveday than to Hiram Jowers. The factors enumerated in Watson weigh in favor of Kent Loveday. He was plainly unaware of the danger and was merely inattentive. The magnitude of the risk created by Jowers' truck and the manner in which he attempted to enter the interstate; his knowledge as a professional truck driver of the danger involved, especially in nighttime travel; his greater experience; and the magnitude of the harm created all weigh in favor of a lesser degree of fault being assigned to Kent Loveday. See also Mohr, supra. Under the facts of this case, Kent Loveday should be assigned 25% fault and Hiram Jowers, 75%.

QUANTUM
Plaintiffs urge on appeal that the trial judge's awards of general damages to Vicki, Floyd and Ava Loveday, on the J.N.O.V., were so low as to constitute an abuse of discretion. Defendants, on the other hand, argue that the trial judge abused his discretion in granting the J.N.O.V. and increasing the general damages awards.
A jury award of damages which is below or above a reasonable amount which could reasonably have been awarded under the evidence is an error specifically remedied by LSA-C.C.P. art. 1811 through judgments N.O.V. The Louisiana Supreme Court construed this article with reference *604 to the granting of a J.N.O.V. concerning damages in Anderson v. New Orleans Public Service, Inc., et al, 583 So.2d 829 (La.1991). The supreme court discussed standards and guidelines applicable to trial courts and appellate courts in granting and reviewing judgments N.O.V. and stated:
"Once a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded. In making this determination, the judge is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). We are aware of some decisions which indicate that the trial judge should be limited by that constraint. See West v. Melancon, 507 So.2d 1250 (La.App. 4th Cir.1987), Barfield v. Jacobs, 527 So.2d 555 (La.App. 3d Cir.1988), Zeagler v. Dillard Department Stores, Inc., 521 So.2d 766 (La.App. 2d Cir.1988). However, we conclude that the better view is that expressed in Rickerson v. Fireman's Fund Insurance Company, 543 So.2d 519, 523 (La.App. 1st Cir. 1989), where the court stated:
'The Coco standard of review does not apply to a trial court's review of a jury's award. Therefore, after rendering the JNOV, the trial court should have rendered a de novo award based on his independent assessment of injuries and damages.'
"The trial judge is in a better position to make a damage assessment than is an appellate court. The trial judge hears the testimony, views the evidence, and is able to evaluate the credibility of the witnesses. Once the jury verdict is set aside under the strict JNOV standards, the trial court is then the trier of fact. It should not be limited by the same constraints placed upon an appellate court reviewing a damage award. The trial judge should make an independent assessment of the damages and award a proper amount of compensation under the facts of the particular case.
"The appellate court, in determining whether the trial court erred in granting the JNOV as to quantum, once again uses the criteria set forth in Scott, supra, [Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986)], i.e., could reasonable men in the exercise of impartial judgment differ as to the fact that the jury award was either abusively high or abusively low. If the answer is in the affirmative, then the trial court erred in granting the JNOV, and the jury's damage award should be reinstated. On the other hand, if the answer is in the negative, then the trial court properly granted the JNOV, and its damage award based on its independent assessment of the damages is the judgment of the trial court which is reviewed on appeal under the constraints of Coco, supra."
In quantum issues, as in other issues, there must necessarily be a degree of uncertainty in predicting the ultimate result in a given case. Results will differ principally because of the myriad differences in the cases presented for review. Before a court of appeal can disturb an award made by a trial court the record must clearly reveal that the trier of fact abused its discretion in making its award. It is inappropriate for courts of appeal to place too much emphasis on a review of other reported cases, since whether two cases are so similar as to produce like quantum judgments is hardly discernible by gleaning the facts of the comparable decision from simply a written opinion of an appellate tribunal. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Also, Reck v. Stevens, 373 So.2d 498 (La. 1979).
The trial jury failed to award any general damages to Vicki Loveday, despite having awarded her medical expenses. Since the jury's failure to award general damages where it awarded medical expenses was an error of law, the trial judge properly granted the J.N.O.V. as to Vicki Loveday. Ammons v. St. Paul Fire & *605 Marine Ins. Co., 525 So.2d 60 (La.App. 3d Cir.), writ denied, 525 So.2d 1045 (La.1988); Labauve v. Central Mut. Ins. Co., 491 So.2d 146 (La.App. 3d Cir.1986).
The trial judge awarded Vicki $30,000.00 general damages. Vicki was pinned in the truck for an hour. She suffered nerve damage to one eye; a blow out fracture to her sinus; injuries to her right shoulder and socket, right hip, right knee, right ankle and back; and seven large pressure blisters on her legs and feet which required daily debriding. Vicki had about six months of physical therapy and was released to regular physical activities eight months after the accident. She had facial scarring which required scar revision procedures one year after the accident. She can no longer wear a contact lens in her right eye, which affects her work as a military counter-intelligence agent. Vicki testified that she still suffers some physical discomfort in her shoulder, hip and ankle when she does her physical training and her back bothers her when she sits or stands very long.
After reviewing similar cases and the record, we cannot find that the trial judge abused his discretion in awarding $30,000.00 general damages to Vicki Loveday.
The trial judge also raised the wrongful death damages awarded to Ava and Floyd Loveday for loss of their minor son, Kent Loveday, from $25,000.00 each to $100,000.00 each.
After a thorough review, we find the jury clearly abused its discretion in awarding only $25,000.00 each wrongful death damages to Ava and Floyd Loveday. This was far lower than the lowest reasonable amount. We further find that an award of $100,000.00 each made by the trial judge in his J.N.O.V. was not an abuse of the trial court's discretion, in light of the testimony concerning the parents' relationship with Kent, the type of child he was and prior similar awards.
Finally, due to the reallocation of fault, we must modify the awards of damages as follows:

Vicki Loveday $37,321.86 reduced by
 25%, or $27,991.30
Ava Loveday $100,000 reduced by
 25%, or $75,000
Floyd Loveday $100,000 reduced by
 25%, or $75,000
Ava & Floyd
Loveday $4,768.17 reduced by
 25%, or $3,576.10
Monroe Trucking,
Inc. $3,464.34 reduced by
 75%, or $866
Allstate Ins. Co. $6,056.60 reduced by
 25%, or $4,542.30

CONCLUSION
For the reasons given, the judgment of the trial court assessing liability is reversed in part and liability is reallocated as follows:
None to Vicki Loveday; 25% to Kent Loveday and 75% to Hiram Jowers.
The judgment of the trial court awarding damages is modified as follows:
It is ORDERED, ADJUDGED and DECREED that the judgment of the trial court awarding monetary damages to Vicki Loveday be amended and it is hereby amended to award in her favor and against HIRAM E. JOWERS, MONROE TRUCKING, INC. and TRAVELERS INSURANCE COMPANY, jointly and in solido, the sum of $27,991.30, with legal interest from date of judicial demand until paid.
It is further ORDERED, ADJUDGED and DECREED that the judgment of the trial court in favor of plaintiff in reconvention, ALLSTATE INSURANCE COMPANY, and against defendants HIRAM E. JOWERS, MONROE TRUCKING, INC. and TRAVELERS INSURANCE COMPANY, jointly and in solido be and it is hereby amended to fix the award at the sum of $4,542.30, with legal interest from date of judicial demand until paid.
In all other respects the judgment of the trial court is affirmed.
Costs of this appeal (together with the costs of the companion case consolidated with this case) are assessed 25% to plaintiffs, Vicki Loveday, Ava Loveday, Floyd E. Loveday, and Allstate Insurance Co., and 75% to defendants, Monroe Trucking, *606 Inc., Hiram Jowers and Travelers Insurance Co.
REVERSED IN PART; MODIFIED IN PART; and RENDERED.