WATSON, Judge.
In this matter, docket number 4764, Barry Boutte, the son of Elton and Gloria Holleman Boutte, sued for damages resulting from personal injuries sustained in an accident on November 4, 1971, while Barry was driving his parents’ 1971 Chevrolet on U. S. Highway 90, approximately 3.6 miles *806 east of Lafayette, Louisiana. U. S. 90 is a four-lane at the accident scene. Elton Boutte and his wife sued for the $50 deductible paid on the property damage to the automobile. This case was consolidated for trial and appeal with docket number 4763, La.App. 303 So.2d 809 wherein Motors Insurance Corporation sued as the collision insurer of the Boutte automobile, claiming the sum of $2865 for damages to the Boutte vehicle.
The accident was alleged by plaintiffs to have occurred as a result of the negligence of Willis H. Eschette in the course of his employment with Rig Hammers, Inc. Es-chette was driving a tractor-trailer truck owned by Rig Hammers, Inc. at the time of the accident. The truck was alleged to have turned left from the outside lane of traffic or the shoulder on the eastbound side of the highway across the inside lane of traffic and into the neutral ground. The Boutte vehicle, also eastbound, collided with the truck.
The trial court rendered judgment in favor of Barry Boutte and against defendants, Rig Hammers, Inc. and Willis H. Es-chette, in solido, as follows:
Personal Injuries: $3,000.00
Medical Expenses: 904.74
Loss of Income: 710.00
Total: $4,614.74
There was also judgment in favor of Elton Boutte in the sum of $50, against the same defendants, in solido.
Defendants, Willis H. Eschette and Rig Hammers, Inc., have appealed, contending that the trial court erred: in finding defendant Eschette to be guilty of negligence; in finding plaintiff Barry Boutte not guilty of contributory negligence; and in awarding damages of $4,614.74 to plaintiff Barry Boutte. Barry Boutte has answered the appeal asking that his award for personal injuries be increased from $3,000 to $6,000.
We affirm.
The issues in this appeal are all factual, the questions for decision being: (1) whether there is manifest error in the trial court’s decision on liability; and (2) whether there is an abuse of the trial court’s “much discretion” in the award for personal injuries.
The evidence was as follows :
Defendant, Willis H. Eschette, was called under cross-examination by plaintiffs and testified that on the date of the accident he was employed as a truck driver by Rig Hammers, Inc. Prior to the accident, he was on Highway 90 in the vicinity of Shorty’s Truck Stop (or Skelly’s Truck Stop) going toward New Iberia. He was driving a 1965 White truck and trailer with a total length of approximately 50 feet. Pie was eastbound, leaving Lafayette. He had stopped at the truck stop and was told by a fellow employee, Paul Bran-tley, to return to Lafayette. He pulled up to the highway from the truck stop and looked to his left. He then went into the outside lane of traffic. Seeing nothing coming, he went over to the inside lane of traffic. He traveled approximately 100 feet in the inside lane with his blinkers on before making his turn into the median. He then stopped for traffic in the westbound lanes. He stopped eight to ten feet back in order to have a clear view of traffic. He was completely stopped waiting for the traffic to clear when the Boutte vehicle struck his truck. He testified that he had turned at this crossover before and that he was aware that a couple of feet of his trailer were in the eastbound travel lane. He did not see the Boutte vehicle until it hit the truck.
Barry Paul Boutte, age 19 at the time of the accident, testified that the accident occurred at approximately 4:30 p. m. The speed limit was 70 miles an hour. He was going between 65 and 68 miles an hour. He saw the truck on the shoulder of the road when he was in the outside lane of traffic. He switched to the inside lane of traffic in order to give the truck room in the outside lane of traffic. “Instead of *807 doing that, he just cut straight across the highway and entered the crossover.” (Tr. 93) Barry immediately applied his brakes, since both lanes of traffic were blocked. His car skidded to the left and then sideways into the truck, the right side of the Boutte vehicle striking the rear cab wheels. Barry testified that he did not remember the actual impact. He was taken to the Lafayette General Hospital where he was treated for a collapsed right lung and other injuries. He remained there for approximately seven days. A tube was inserted in Barry’s side to re-inflate his lung and he testified that this procedure was extremely uncomfortable. The tube remained for a period of five days. After being released from the hospital, Barry saw his doctor three times. He testified that he had pain for four or five months after the accident. He was told not to participate in any heavy work for two months after he left the hospital. He was employed at Romero’s Aluminum Company in New Iberia at the time of the accident and missed approximately two months’ work as a result of the accident. He was making $1.75 an hour and was working 40 hours a week. He was also in the National Guard at the time and missed two drills for which he would have received $75 each. He resumed parachuting as part of his special forces National Guard training four months after the accident.
Barry Boutte testified that he had measured the neutral ground at the scene of the accident and that it measured 64 feet, including the inside shoulders. He testified that the visibility was unlimited at the time of the accident and that he first saw the Eschette truck when he was approximately a quarter-mile from it. The Es-chette truck appeared to be going two or three miles per hour, according to Boutte, and it proceeded along the righthand shoulder for approximately 250 feet before starting to turn across the road.
The parties stipulated as to the medical expenses and as to Barry Boutte’s employment and wages.
It was also stipulated that the property damage to the Boutte vehicle totaled $2,915; that Motors Insurance Corporation paid $2,865 of that amount and is subrogat-ed to that extent; and that the deductible paid was $50.
Trooper First Class Leroy Dugas of the Louisiana State Police testified that he investigated the accident in question on Highway 90 East. The highway at that point is a four-lane highway with numerous crossovers; the four lanes are divided by a neutral ground approximately 30 feet wide. The two eastbound lanes of travel are 24 feet wide, and he estimated the blacktopped shoulders as approximately five feet wide. Trooper Dugas stated that he was familiar with the area of the accident and that there were no obstructions to vision. He found the Boutte Chevrolet in the crossover and the truck partially in the crossover. The right side of the Chevrolet was damaged, but there was no damage on the front. The Chevrolet left approximately 180 feet of skidmarks beginning in the inside eastbound lane of Highway 90. The skidmarks were straight and then curved into the crossover; the point of impact was in the crossover itself. After viewing photographs of the accident, the officer stated that the trailer of the truck was only protruding a foot-and-a-half or two into the travel lane of the highway after the accident. After viewing the photographs, the officer also identified skid-marks from the truck, explaining that sometimes skidmarks come out in photographs that are not visible to the naked eye. The officer stated that the skidmarks appear at an angle from the outside lane of Highway 90. Officer Dugas stated that Mr. Boutte was unconscious when he arrived at the scene.
Mark Phillip Gonsoulin testified that he arrived at the scene of the accident and saw a truck stopped in the turn median and a car up against the truck belonging to Barry Boutte, whom he had known ten or eleven years. Gonsoulin testified that he had had experience driving cane trucks; *808 and that these trucks are approximately the same length as the truck involved in the accident. He testified that the position of the truck showed that it had not been turned from the inside lane of traffic into the median.
Woodrow Wilson Scott, a safety manager of Rig Hammers, Inc., testified that Mr. Eschette’s statement as to why he stopped his vehicle where he did was in line with the safety training given by Rig Hammers. He stated that all of the drivers are taught to stop short of the lane of traffic when making a turn so that they will have good visibility.
Francis Paul Brantley testified by deposition that he was employed by Rig Hammers as an engineer at the time of the accident. He had followed Willis Eschette in order to tell him to return to Lafayette. He was on the right shoulder of the westbound lane of the highway when the accident occurred. He had completed his turn, was only going three to four miles per hour and was waiting for Eschette to complete his turn. Brantley testified that the Eschette truck was stopped in the neutral ground at the time of the collision; that there were two or three feet of the trailer projecting onto the highway; and that it would have been impossible to get the whole rig into the neutral ground. Bran-tley said he heard the Boutte vehicle start skidding; and that it skidded onto the shoulder of the road and then broadside into the crossover, hitting the truck on the back of the cab.
Dr. George Robert Smith, stipulated to be an expert in the field of general surgery, testified by deposition as follows :
He saw Barry Paul Boutte in the emergency room of Lafayette General Hospital at about 5:30 p. m. on November 4, 1971. Examination showed a possible rib fracture, a large abrasion over the right flank region, a large abrasion of the right forearm and a large contusion at the right knee with some swelling. Barry gave a history of having been knocked out in an automobile accident and stated that he was having pain in the right lower rib cage, along his right flank and in his right knee. X-rays showed no fractures. He was given demoral for pain and additional x-rays were given the next day which showed a partially collapsed right lung and some fluid accumulation in the right chest. Dr. Smith attributed the partial collapse of the lung to a rib fracture which did not show up on the x-rays, although he said it could have been the result of severe trauma. The fluid in the right chest was bloody and a chest tube was put into his right thoracic cavity to drain the fluid and re-expand the lung. Antibiotics were administered to prevent infection in the chest cavity. Barry remained in the hospital until November 11, 1971; antibiotics were continued for five days after that. He was told by the doctor not to go back to work and not to participate in any strenuous activity. He was then seen on November IS, November 29 and December 16. X-rays were taken on each of these occasions; the patient was discharged on December 16, 1971, and told he could go back to work in January. He was left with a small scar where the tube was inserted.
Dr. Smith gave his opinion that Barry would have been incapacitated for approximately two months as a result of the accident.
As in many automobile accidents, the testimony of the witnesses is to some extent contradictory. Barry Boutte testified that the truck turned across the highway from the right shoulder of the road, and Willis Eschette testified that he made a left turn into the median from the inside lane of traffic. The trial court apparently believed Barry Boutte. The skidmarks left by the truck confirmed Barry Boutte’s version of the accident. Mr. Eschette admitted that he never saw the Boutte vehicle. The Eschette truck was entering the highway from the shoulder of the road and had the primary duty of avoiding the collision. Sholar v. United States Fire Insurance Company, 261 So.2d 327 (La.App. 1 Cir. *809 1972). Barry Boutte was proceeding at a legal speed, and the trial court accepted his testimony that he attempted to stop as soon as he saw the truck turn across his path. To quote from the trial court’s reasons for judgment:
“The court was impressed with the testimony of Boutte. His version of the collision is the most logical one and is supported by the physical evidence as testified to by the witnesses and as exhibited by the photographs in evidence. The court is of the opinion that the collision occurred as a result of the negligence of Eschette and that Boutte was free from negligence.” (TR. 239)
We find no manifest error in the trial court’s conclusions that Willis Es-chette was negligent and that Barry Boutte was not guilty of contributory negligence.
Although Barry Boutte did not incur any permanent injuries, he did suffer severe trauma; remained seven days in the hospital; underwent a painful procedure to have his lung re-inflated; and missed two months’ work. We find the award of the trial court to be reasonable and within its “much discretion” under the circumstances. LSA-C.C. art. 1934; Palmieri v. Frierson, 275 So.2d 214 (La.App. 1 Cir. 1973); affirmed 288 So.2d 620 (La. 1974).
All costs of this appeal are assessed to defendants-appellants, Willis Eschette and Rig Hammers, Inc.
For the foregoing reasons, the judgment of the trial court is affirmed.
Affirmed.