STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-876


RAVEN BOYANCE, ET AL.

VERSUS

UNITED FIRE AND CASUALTY COMPANY, ET AL.


**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 82216
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

**********

**PHYLLIS M. KEATY**
**JUDGE**

**********

Court composed of Phyllis M. Keaty, John E. Conery, and Van H. Kyzar, Judges.


**AFFIRMED.**


**Conery, J., dissents and assigns reasons.**

**David R. Rabalais**
**The Dill Firm**
**Post Office Box 3324**
**Lafayette, Louisiana 70502-3324**
**(337) 261-1408**
**Counsel for Defendants/Appellees:**
  **Canal Insurance Company**
  **Clodhopper Trucking, LLC**
  **William Caldwell**

**Kraig Thomas Strenge**
**Post Office Drawer 52292**
**Lafayette, Louisiana 70502-2292**
**(337) 261-9722**
**Counsel for Defendants/Appellants:**
  **Christopher Crain**
  **Louisiana Fresh Produce, LLC**
  **United Fire and Casualty Company**

**Harry K. Burdette**
**The Glenn Armentor Law Corporation**
**300 Stewart Street**
**Lafayette, Louisiana 70501**
**(337) 233-1471**
**Counsel for Plaintiff/Appellee:**
  **Raven Boyance**
  **Raven Boyance o/b/o Rashawn Boyance**

**KEATY, Judge.**

This appeal arises out of a three-vehicle collision. Appellants, United Fire and Casualty Company, Christopher Crain, and Louisiana Fresh Produce, LLC (hereafter collectively referred to as the Crain Defendants), appeal a judgment granting summary judgment in favor of defendants, Canal Insurance Company, William Caldwell, and Clodhopper Trucking, LLC (hereafter collectively referred to as the Caldwell Defendants), "finding that William R. Caldwell was without fault in causing the accident giving rise to this litigation." For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Raven Boyance, individually and on behalf of her minor son, Rashawn Boyance (hereafter collectively referred to as Ms. Boyance or Plaintiff), filed a Petition for Damages in January 2015 against the Crain and the Caldwell Defendants. The Petition alleged, in pertinent part, as follows:

> 3.
> On January 9, 2014, [Ms.] Boyance was the driver of a 1999 Dodge Dakota. . . .

> 4.
>
> Ms. Boyance was traveling westbound on I-10, in St. Martin Parish, State of Louisiana. She was forced to slow to a stop after a 2000 Kenworth Trailer/Truck, driven by **WILLIAM R. CALDWELL**, and owned by **CLODHOPPER TRUCKING, L.L.C.**, pulled onto the roadway from the shoulder immediately ahead of Ms. Boyance, without notice. Ms. Boyance immediately applied her brakes.

> 5.
>
> At that time, **CHRISTOPHER D. CRAIN**, while operating a 2012 Isuzu Truck owned by **LOUISIANA FRESH PRODUCE, L.L.C.**, suddenly, and without warning, violently struck the back of Ms. Boyance's vehicle. The force of the collision was so severe that it forced Ms. Boyance's vehicle to rotate clockwise and then be pushed into the 2000 Kenworth Trailer/Truck being operated by **Mr. WILLIAM R. CALDWELL**. The full force of the collision set off a chain reaction that also forced Ms. Boyance's vehicle into the rear of

the vehicle in front of her, then continue to rotate clockwise until it came to a rest in the middle of the roadway, engulfed in flames. Plaintiff, Rashawn Boyance was a passenger in the vehicle, and was trapped in his car seat in the back seat of the burning car, as his mother watched.

6.

At the time of the accident Mr. **WILLIAM R. CALDWELL** was an employee and agent of **CLODHOPPER TRUCKING, L.L.C..** Further, at the time of the accident, Mr. **CHRISTOPHER D. CRAIN** was an employee and agent of **CUSIMANO-CUCCIA, L.L.C. D/B/A LOUISIANA FRESH PRODUCE L.L.C. AND LOUISIANA FRESH FRUITS AND VEGETABLES, D/B/A LOUISIANA FRESH PRODUCE, L.L.C.**

The Caldwell Defendants filed a Motion for Summary Judgment (MSJ) on July 26, 2016, asserting that Ms. Boyance would be unable to meet her burden of proving negligence on the part of Mr. Caldwell. After several continuances, the MSJ came for hearing on April 13, 2017. At the conclusion of the hearing, the trial court granted summary judgment in favor of the Caldwell Defendants.

The Crain Defendants now appeal, asserting that[1]:

1. Opposing counsel for Canal Insurance, Clodhopper and Caldwell failed to make a proper record for summary judgment.

2. The Honorable Louis Pittman, Jr. erred in making a factual finding on ruling on a Motion for Summary Judgment.

3. The Honorable Louis Pittman, Jr. erred in granting plaintiff's[2] Motion for Summary Judgment.

**DISCUSSION**

"Appellate review of the granting of a motion for summary judgment is *de novo*, using the identical criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Smitko v. Gulf S. Shrimp, Inc.*, 11-2566, p. 7 (La. 7/2/12), 94 So.3d 750, 755. "The summary judgment procedure is

---

[1] For ease of discussion, we renumbered the Crain Defendants' assignments of error.

[2] The Crain Defendants' assignment of error is factually incorrect as the MSJ at issue in this appeal was filed by the Caldwell Defendants rather than by Plaintiff. We note that Plaintiff did not file any pleadings in response to the Caldwell Defendants' MSJ.

2

designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). On de novo review, "there is no deference to the trial judge's legal findings, and we make an independent review of the evidence in determining whether there is no genuine issue of material fact and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966." *Bridges v. Cepolk Corp.*, 13-1051, p. 10 (La.App. 3 Cir. 2/12/14), 153 So.3d 1137, 1145, *writ denied*, 14-901 (La. 8/25/14), 147 So.3d 1117. "A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Smitko*, 94 So.3d at 755.

According to La.Code Civ.P. art. 966(D)(1):

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Code of Civil Procedure Article 967(B) further provides:

> When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.

The basis of the Caldwell Defendants' MSJ was that Ms. Boyance would be unable to meet her burden of proving that Mr. Caldwell acted negligently and that his negligence caused the harm suffered by her and her son. In support of their

MSJ, the Caldwell Defendants attached several excerpts from Ms. Boyance's deposition.

The Crain Defendants opposed the motion claiming summary judgment was premature because discovery was not complete as they had been unable to locate and depose Mr. Crain and because they and the Caldwell Defendants had hired experts who had yet to be deposed. They further claimed that many genuine issues of material fact remained which precluded the granting of summary judgment in favor of the Caldwell Defendants. The Crain Defendants attached to their opposition the complete depositions of Ms. Boyance and Mr. Caldwell, along with the deposition of State Trooper Timothy Breaux, who investigated the accident.

In a reply memorandum, the Caldwell Defendants pointed out that their MSJ was filed nineteen months after this suit was filed. They alleged that the "only impediment to the motion moving forward" is the inability of the Crain Defendants to produce their insured driver, Christopher Crain, for deposition. The Caldwell Defendants submitted that the so-called questions posed in the Crain Defendants' opposition were not questions of material fact and as such did not preclude the granting of summary judgment in their favor. In January 2017, the trial court granted the Caldwell Defendants' request to reset the MSJ for hearing.

Thereafter, the Crain Defendants filed a supplemental opposition, to which they attached excerpts of the deposition testimony of Brent Munyon, the Forensic Accident Reconstructionist hired by the Caldwell Defendants; the preliminary report written by Mr. Munyon; the transcript of a February 2014 recorded statement of William Caldwell; and the transcript of a January 2014 recorded statement of Joe Robinson, an independent witness who was driving behind Mr. Crain's truck when the January 9, 2014 accident occurred. According to the Crain Defendants, the exhibits attached to their supplemental opposition

4

"emphasize[d] the numerous factual issues herein," precluding the appropriateness of utilizing the summary judgment procedure in this matter. In response, the Caldwell Defendants filed an objection to the supplemental opposition and additional documents filed by the Crain Defendants as it was filed only six days in advance of the already several times continued April 13, 2017 hearing, in contravention of the requirement in La.Code Civ.P. art. 966(B)(2) that "[a]ny opposition to the motion [for summary judgment] and all documents in support of the opposition shall be filed and served . . . not less than fifteen days prior to the hearing on the motion." Alternatively, the Caldwell Defendants requested that they be allowed to file an accompanying supplemental reply memorandum in support of their MSJ. They attached to the pleading Mr. Munyon's entire deposition, along with the aforementioned transcribed statements of William Caldwell and Joe Robinson.

Ms. Boyance did not oppose the Caldwell Defendants' MSJ, nor did she appear when the motion was heard on April 13, 2017. After listening to oral arguments, the trial court stated that it had read the Crain Defendants' supplemental opposition despite the Caldwell Defendants' opposition to its having been filing late. Thereafter, the trial court granted summary judgment in favor of the Caldwell Defendants and designated the judgment as final for purposes of immediate appeal.

### *Did the Caldwell Defendants Make a Proper Record to Support Their MSJ?*

In their first assigned error, the Crain Defendants assert that because counsel for the Caldwell Defendants failed to "formally offer his supporting documents into evidence," the record does not contain evidence to support the granting of summary judgment in their favor. Because our review of this appeal is de novo, we can only consider evidence that was properly offered in support of and in

opposition to the MSJ. Accordingly, we must address this assignment of error before considering the merits of the MSJ.

The procedural rules governing summary judgments are found in La.Code Civ.P. art. 966, which at all times relevant to this appeal provided, in pertinent part, as follows:

> A. (4) The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. . . .
>
> . . . .
>
> D. (2) The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.

Louisiana Code of Civil Procedure Article 966 no longer requires the formal introduction of evidence at a summary judgment hearing. *Evans v. Bordelon*, 13-888 (La.App. 3 Cir. 3/19/14), 161 So.3d 674. The documents attached to the Caldwell Defendants' various memoranda in support are the type of documents authorized in La.Code Civ.P. art. 966(A)(4) for a court's consideration of a MSJ. Moreover, the Crain Defendants failed to object to any of the documents the Caldwell Defendants filed in support of their MSJ. "The intent of Article 966(D)(2) was to make it **mandatory** that any objection to a document filed in support of or in opposition to a motion for summary judgment must be objected to in a timely filed opposition or reply memorandum." *Adolph v. Lighthouse Prop. Ins. Corp.*, 16-1275, p. 6 (La.App. 1 Cir. 9/8/17), 227 So.3d 316, 320 (emphasis added). Without addressing the merits, we find that the Caldwell Defendants supported their MSJ in conformity with the procedural dictates of La.Code Civ.P.

6

art. 966. Therefore, the supporting documents filed by the Caldwell Defendants became a part of the record and can be considered by this court on appeal. The Crain Defendants' first assigned error lacks merit.

## *Was Summary Judgment Properly Granted?*

In their second and third assignments of error, the Crain Defendants insist that the trial court erred in making a factual finding on a MSJ and in granting summary judgment in favor of the Caldwell Defendants. Because the issues raised in these two errors are intertwined, we will discuss them simultaneously.

As stated above, this court must perform "an independent review of the evidence in determining whether there is no **genuine issue of material fact** and whether the mover is entitled to judgment as a matter of law under La.Code Civ.P. art. 966." *Bridges*, 153 So.3d at 1145 (emphasis added). In *Phillips v. City of Crowley*, 12-1306, pp. 5-6 (La.App. 3 Cir. 6/19/13), 115 So.3d 1240, 1243-44 (citations omitted), *writ denied*, 13-1718 (La. 11/1/13), 125 So.3d 432, this court explained:

> "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730, 751 (quoting *South Louisiana Bank v. Williams*, 591 So.2d 375, 377 (La.App. 3 Cir.1991), *writ denied*, 596 So.2d 211 (La.1992)). A genuine issue is one in which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate. *Id.* Whether a fact is material is determined in light of the relevant substantive law. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.

"We must analyze the substantive law governing the instant matter to determine whether a fact is material." *Leblanc v. Bouzon*, 14-1041, p. 3 (La.App. 3 Cir. 3/4/15), 159 So.3d 1144, 1146. Louisiana Revised Statutes 32:81(A), titled "Following vehicles," provides, that "[t]he driver of a motor vehicle shall not

follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." "A following motorist involved in a rear-end collision, therefore, is presumed to have breached this statutory duty." *Bouzon*, 159 So.3d at 1146.

> [A] legal presumption does exist that a following motorist who collides into the rear end of a leading automobile is at fault. *Matherne v. Lorraine,* 03-2369 (La.App. 1 Cir. 9/17/04), 888 So.2d 244, 246. The following motorist must exonerate himself or herself from fault before he or she can completely avoid liability. *Id.* However, notwithstanding the presumption of negligence, a favored motorist can still be assessed with comparative fault if his or her substandard conduct contributed to the cause of the accident. *Id.* "[O]nce the presumption of negligence attaches to the defendant, the ordinary rules of comparative negligence apply[.]"

*Id.* at 1147 (quoting *Graffia v. La. Farm Bureau Cas. Ins. Co.*, 08-1480, p. 7 (La.App. 1 Cir. 2/13/09), 6 So.3d 270, 274). "A motion for summary judgment can be granted on the presumption that a following motorist who strikes a leading motorist is negligent." *Lewis v. Old Republic Ins. Co.*, 17-456, p. 3 (La.App. 3 Cir. 8/23/17), 226 So.3d 557, 559.

In *Bouzon*, the lead driver in a three-vehicle collision appealed the trial court's grant of summary judgment in favor of the middle driver in the personal injury lawsuit the lead driver filed against the drivers of the other two vehicles involved in the accident. Upon de novo review, this court affirmed, noting that "[t]he burden of proof remains with the following motorist who must prove that he was not negligent." *Bouzon*, 159 So.3d at 1147. Thereafter, we explained:

> In order to rebut the objective evidence that [the driver of the first vehicle] and [the driver of the second vehicle] were able to safely stop and avoid a collision, [the driver of the third vehicle] must show that he had his vehicle under control, closely observed the lead vehicle, and followed at a safe distance prior to rear-ending [the second] vehicle.

*Id.* at 1149. Because we concluded that the testimony and evidence submitted in favor of and in opposition to the middle driver's MSJ indicated that the driver of

the third vehicle would not be able to rebut the presumption that he was at fault in causing the accident, we affirmed. We rejected the lead driver's contention that "some of the fault attributed to [the driver of the third vehicle] may be transferred to [the driver of the second vehicle,]" finding no evidence to support the lead driver's suggestion that the middle vehicle struck her car two times. *Id.* at 1147. Finally, we found the sudden emergency doctrine inapplicable to the third driver where the drivers of the first two vehicles "stopped their vehicles and avoided a collision despite the heavy traffic." *Id.* at 1149.

In the instant case, Ms. Boyance, the driver of the middle car, explained in her deposition that when Mr. Caldwell merged onto I-10 in front of her, she was able to slow down from seventy miles per hour to approximately forty miles per hour because she could see him from a far distance away. She recalled telling her son, "thank God I saw him," and being rear-ended before she could finish her sentence. She stated that she did not strike Mr. Caldwell's truck before she was struck from behind. Mr. Robinson, a truck driver who was traveling westbound on I-10 about 150 yards behind Mr. Crain's "6 wheeler," gave a recorded statement eleven days after the accident. Mr. Robinson stated that he was able to see Mr. Caldwell's "18 wheeler" merge onto the highway. He explained that, from what he saw, he "guess[ed] the 6 wheeler might have clipped [Ms. Boyance's] SUV in the tail end which spun it around which hit the back of the tractor trailer." Mr. Robinson stated that he told his version of the accident to the investigating state trooper.

Trooper Breaux testified in his deposition that Mr. Crain told him that he was following behind Ms. Boyance's vehicle on I-10 West, and when he realized that her vehicle was slowing down, he was unable to stop in time to avoid hitting her from behind. Trooper Breaux explained that he found no evidence that

Plaintiff's SUV struck Mr. Caldwell's truck before she was hit from behind by Mr. Crain. After completing his investigation, Trooper Breaux concluded that Mr. Crain had not maintained a safe, appropriate distance between his vehicle and Ms. Boyance's vehicle and issued a citation to him for following too close.

The Crain Defendants put great emphasis on the statement in Mr. Caldwell's deposition that he felt two bumps, the first one of which was very light and the second one which was harder, and they suggest that Mr. Caldwell created a sudden emergency by improperly merging in front of Ms. Boyance. They also point to inconsistencies between the testimonies of Ms. Boyance, Mr. Caldwell, Trooper Breaux, and Mr. Munyon regarding the precise location of the accident, which they claim present a genuine issue of material fact that make the issue of Mr. Caldwell's liability inappropriate for resolution via summary judgment.

The Caldwell Defendants counter that the Crain Defendants have failed to present any evidence that Mr. Caldwell "merged improperly or illegally" or in an otherwise negligent manner. They refer to Ms. Boyance's testimony wherein she stated that it "wasn't in a manner of me just jamming my foot on the brakes" but it also "wasn't just me slowly as if coming in to a stop sign." Finally, they submit that the minor discrepancies noted by the Crain Defendants do not amount to genuine issues of a material fact.

We have completed a de novo review of the evidence offered in support of and in opposition to the MSJ, and we conclude that the Crain Defendants failed to rebut the presumption that Mr. Crain was negligent in causing the accident. We are satisfied that no genuine issues of **material** fact remain in dispute and that the Crain Defendants cannot exonerate Mr. Crain of fault or establish facts sufficient to demonstrate the comparative fault of Mr. Caldwell. Although the initial burden of proof would rest with Ms. Boyance at trial, if she were to succeed in proving

Mr. Crain's fault in causing this accident, the burden would shift to the Crain Defendants, based on their alleged affirmative defense, to prove that Mr. Caldwell was comparatively at fault. Accordingly, the Crain Defendants had to do more than simply "rest on the mere allegations . . . of [their] pleading" and were required to "set forth specific facts" to show that a genuine issue remained regarding Mr. Caldwell's liability for causing the subject accident. La.Code Civ.P. art. 967(B). They failed to do so. Because we are convinced that "reasonable persons could reach only one conclusion," i.e., that Mr. Caldwell did not commit any negligence that resulted in the damages suffered by Ms. Boyance and her son, we conclude that summary judgment was properly rendered in favor of the Caldwell Defendants. *Phillips*, 115 So.3d at 1244. There is no merit to the Crain Defendants' second and third assigned errors.

## DECREE

For the foregoing reasons, the trial court judgment in favor of Canal Insurance Company, William Caldwell, and Clodhopper Trucking, LLC is affirmed. All costs of this proceeding are assessed against Appellants, Christopher Crain, Louisiana Fresh Produce, LLC, and United Fire and Casualty Company.

**AFFIRMED.**

**Conery, J., dissents and assigns reasons.**

I respectfully dissent. After reviewing all the evidence and the trial judge's reasons, I would find that this "chain reaction collision" is not appropriate for summary judgment.

A review of the summary judgment evidence shows that plaintiff, Ms. Boyance, was driving in the right lane of I-10 W with her son as a passenger. She saw an eighteen-wheeler, driven by Mr. Caldwell, unexpectedly pull into the lane in front of her, requiring her to immediately apply her brakes. Ms. Boyance was then hit from behind by Mr. Crain, propelling her vehicle into Mr. Caldwell's truck, where she then spun on the road, and her vehicle burst into flames. Ms. Boyance sued Mr. Caldwell, his employer and its insurer, as well as Mr. Crain, his employer and its insurer, claiming the collision and resulting damages were caused by the fault of both drivers.

Nineteen months after suit was filed, the three Caldwell defendants filed a collective motion for summary judgment, which was granted by the trial court.

The trial judge carefully weighed all of the evidence and concluded in his oral reasons that when Ms. Boyance saw Mr. Caldwell's eighteen-wheeler enter her traffic lane, "she (Ms. Boyance) did moderate braking. She didn't say she slammed on her brakes, she said moderate braking and the fact that rains crystal clear to me that Louisiana Fresh Produce (Mr. Crain's vehicle) was the vehicle that struck her first." The conscientious trial judge in this case carefully reviewed all the evidence and obviously made factual findings as to when Ms. Boyance first saw Mr. Caldwell's vehicle attempt to merge, whether she forcefully applied her brakes, the relative speeds of the three vehicles and whether to accept Mr. Caldwell's testimony that he felt two impacts. Had all of this same evidence been

submitted for a decision on the merits, I would likely agree to affirm, as at a trial on the merits, the trial judge has the duty and obligation to weigh the evidence, assess credibility, make factual findings, and render a decision in accordance with the law and the evidence.

However, I would find that the well-meaning trial judge improperly weighed the evidence and made factual findings and conclusions that are inappropriate for summary judgment based on the conflicting evidence in this case. *See Mecon v. Mobil Oil Company*, 299 So.2d 380 (La.App. 3 Cir.), *writ denied*, 302 So.2d 308 (La.1974) ("the weighing of conflicting evidence on a material fact has no place in summary judgment procedure"). I would submit that at the very least, there is a genuine issue of material fact as to whether but-for Mr. Caldwell's manner of merging into traffic on I-10, this accident would not have occurred. While I agree that the Crain vehicle was following too closely and/or driving without due regard as to the safety of the preceding vehicle driven by Ms. Boyance, there are genuine issues of material fact as to Mr. Caldwell's comparative fault for improperly merging onto I-10 from the shoulder or the merge lane from the weigh station.

The majority affirmed the trial court's judgment finding no genuine issues of material fact to defeat the Caldwell defendants' motion. The majority opinion explores the law on following too closely and the presumption that a second driver, Mr. Crain, who rear-ends the driver in front of him, Ms. Boyance, is presumed to be at fault, and the Crain defendants did not properly show the existence of genuine issues of material facts. The majority finds that the trial court was correct to apply the presumption of negligence against Mr. Crain, his employer and its insurer, and grant the Caldwell defendants' motion for summary judgment exculpating the driver of the eighteen-wheeler, Mr. Caldwell, from fault.

13

However, it is undisputed that Mr. Caldwell's Kenworth eighteen-wheeler tractor trailer attempted to merge onto I-10, a heavily traveled interstate at approximately 8:00 am during peak traffic time. Ms. Boyance then saw the eighteen-wheeler and immediately applied her brakes. Mr. Crain's truck then struck her from the rear, propelling her into Mr. Caldwell's eighteen-wheeler. The record evidence shows that when Mr. Caldwell entered onto I-10 in Ms. Boyance's lane of travel, the distance from the truck weigh station, the distance between the three vehicles and the relative speed of the vehicles are all in dispute.

Ms. Boyance clearly stated in her deposition that Mr. Caldwell pulled onto I-10 from the shoulder of the road unexpectedly and without warning or turn signals: "once I saw him merger, I immediately just hit my brakes." When asked whether she gradually slowed down on seeing the eighteen-wheeler "merge on", she stated: "I wouldn't say gradual . . . . I mean I seen him on the side of the road but his merge on was unexpected. I had to kind of hesitate a little bit, but I didn't actually have to slam it (meaning her brakes) and tires burning, it wasn't that extent. But it was enough for me to have to quickly react."

She further testified that she would have had to continue to brake to avoid hitting Mr. Caldwell's truck. At the very least Ms. Boyance's deposition testimony leaves open an interpretation of the evidence that Mr. Caldwell "unexpectedly" and improperly merged into Ms. Boyance's lane of traffic, causing her to "react quickly" and "immediately just hit my brakes", causing Mr. Crain then to strike her vehicle from the rear, propelling her into Mr. Caldwell's eighteen-wheeler.

Louisiana Revised Statutes 32:124 (the statute governing motorists entering highways from private driveways), provides, "[t]he driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle . . . and shall yield the right of way to all approaching vehicles so

14

close as to constitute an immediate hazard." In *Sholar v. U.S. Fire Ins. Co.*, 261 So.2d 327, (La.App. 1 Cir. 1972) the court held that a motorist who enters the highway from the shoulder is held to the same standard of care as a motorist entering the highway from a private driveway.

A panel of our court in *Loveday v. Travelers Ins. Co.*, 585 So.2d 597 (La.App. 3 Cir.); *writ denied* 590 So.2d 65 (La.1991) stated in a case similar to the case at bar:

It is clear from the testimony and evidence that Jowers breached the **duty** set for the under LSA - R.S. 32:64(B) by failing to accelerate his speed sufficiently prior to attempting to re-enter the **interstate** from the shoulder. This negligence was a cause in fact of the accident.

**[6]** Also, under LSA - R.S. 32:124 Jowers had a **duty**, in attempting to enter the **interstate** from the shoulder, to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. **A motorist** attempting to enter the highway from the shoulder of the road is held to the same standard of care as the **motorist** entering a highway from a private driveway. The **motorist** entering a highway from a private driveway has the primary **duty** to avoid a collision. *Sholar v. U.S. Fire Ins. Co.*, 261 So.2d 327 (La.App. 1ˢᵗ Cir. 1972). Also, *Hickman v. Southern Pacific Transport Co.*, 262 La. 102, 262 So.2d 385 (1972); *Boutte v. Rig Hammers, Inc.*, 303 So.2d 805 (La.App. 3d Cir.1974); *Bates v. Lagars*, 193 So.2d 375 (La.App. 2d Cir.1966), writ refused, 250 La. 267, 195 So.2d 146 (1967).

**[7]** This **duty** becomes more onerous as the hazards increase and requires a **motorist** to use every reasonable means available to ascertain that his entry onto the highway may be made in safety. Further, such a driver is required to keep a lookout for vehicles upon the highway and to desist from entering until it is

15

apparent to a reasonable prudent person that such can be done in safety. *Soileau v. LaFosse*, 558 So.2d 294 (La.App. 3d Cir.1990); *Wells v. Allstate Insurance Co.*, 510 So.2d 763 (La.App. 1ˢᵗ Cir.,) writ denied, 514 So.2d 463 (La.1987); *Hardee v. St. Paul Fire and Marine Ins. Co.*, 445 So.2d 771 (La.App. 3d Cir.1984).

In *Maylen v. Great West Casualty Company,* 15-484, (La.App. 3 Cir. 11/4/15), 178 So.2d 302, another panel of our court found that because the facts were not in dispute in that case, summary judgment was appropriate. While recognizing the duty of the merging motorist to yield the right of way, the uncontroverted facts in that case indicated that once the defendant driver merged, the second and third vehicles following him were able to slow their vehicles and avoid a collision. "Neither was forced to make a complete stop or travel off of the shoulder of the road." The court stated: "Accordingly, the summary judgment evidence shows that David (the merging vehicle) did not fail to yield to the approaching vehicles so close as to constitute an immediate hazard. Thus David did not breach his duty." Id at p 306.

I would submit that the driver of an eighteen-wheeler entering traffic on a heavily traveled Interstate Highway during peak traffic hours from a highway weigh station or shoulder has an exceptionally high duty of care when attempting to merge onto that busy interstate highway. *Loveday v. Travelers Ins. Co., supra.* I would find that in this case there are genuine issues of material fact as to whether Mr. Caldwell improperly merged onto I-10, which action contributed to this "chain reaction collision." I would reverse the summary judgment and remand the case to the trial court for a full trial on the merits.